## THE ST. LOUIS BRIDGE COMPANY

*v.*

### EMAROY MILLER.

*Filed at Mt. Vernon November 4, 1891.*

1. BRIDGE COMPANY—*liability for negligence—duty to exercise care.* It is the legal duty of a bridge company to exercise reasonable and ordinary care and prudence in the construction, management and supervision of its bridge, for the safety and protection of persons using it, and to make reasonable provision for the prevention of injuries from causes likely to arise in the ordinary use of the bridge, although no specific expedient for the prevention of such injuries may have been required, either by the law or defendant's charter.

2. If the construction of a railing or other barrier between its carriage road and foot-way is the most obvious and appropriate expedient for preventing injuries which, in the ordinary use of the bridge, are likely to happen to foot passengers, it is the duty of the bridge company to construct and maintain such railings or other barriers.

3. A bridge company is liable for an injury resulting from negligence in the construction and maintenance of its structures, notwithstanding other parties or agencies not controlled by it may also have contributed to the injury. A person contributing to a tort, whether his fellow contributors are men, natural or other forces, or things, is responsible for the whole, the same as though he had done all without help.

4. SAME—*toll-bridge—higher degree of care.* A bridge company, authorized to construct and maintain a toll-bridge, and to collect and receive tolls of such persons as may make use of it, should be held to a higher degree of diligence in caring for the safety of passengers crossing the bridge than a corporation performing that service for the public gratuitously would be.

5. In an action against a bridge company for the personal injury of the plaintiff while crossing an approach, from the stampede of a drove of mules, the jury may consider the fact of the plaintiff's payment of toll, when it is alleged and proved, in passing upon the defendant's negligence.

6. NEGLIGENCE—*as matter of law.* While the use of an approach to a bridge, knowing of its improper or dangerous construction, may be evidence of negligence on the part of one injured while passing over the same, yet it can not be pronounced negligence *per se,* or as matter of law. An instruction containing the proposition that such act is negligence *per se* is properly refused.

30—138 ILL.

7. SAME—*action for personal injury—right to a rule on plaintiff to submit to a personal examination.* In an action to recover for personal injuries, the defendant will have no right to a rule on the plaintiff to submit to an examination of his or her person, for the mere purpose of ascertaining the extent and permanency of the injuries complained of, when it is not sought for the purpose of obtaining evidence to be used on the trial, and no necessity is shown for the evidence sought by such examination.

8. If the defendant is entitled to a personal examination of the plaintiff by experts, for the purpose of ascertaining the nature and extent of the injuries complained of, he should make proof of the necessity of the evidence to be derived from such examination. In the absence of any showing the court will have the right to presume that the defendant has other evidence as to the same facts at hand, and is in no way dependent upon the results of a personal examination to make out his defense.

9. SAME—*concurrent act of two—liability for.* The fact that an injury could not have happened without the wrongful or negligent act of one, is not a test of the non-responsibility of another. A tort may be such as to require for its perpetration the concurrent action of several, so that if either one fails in his part the tort is not committed. The fact that but for the wrongful act of either of two tort feasors the injury would not have occurred, can not be urged in favor of the other. They are all liable jointly and severally for the entire tort.

10. INSTRUCTION—*ambiguity cured by other instructions.* In an action based on the negligence of the defendant, a clause in an instruction for the plaintiff, that if the jury believe, from the evidence, the plaintiff "was injured as alleged in the declaration," is ambiguous, in being liable to be understood to mean that the plaintiff received the injury alleged, without reference to the allegations of negligence, or that he received the injury in the manner and by the causes alleged in the declaration. But such ambiguity is cured by other instructions of the defendant, making a right of recovery to depend upon proof of defendant's negligence, and that such negligence was the cause of the injury.

11. APPEAL—*reviewing the facts.* Where the Appellate Court affirms the judgment of the trial court in favor of the plaintiff, in an action to recover for personal injuries from negligence of the defendant, the fact that plaintiff was injured in the manner and to the extent, and that his injuries were of the character and permanency, alleged, will not be open to controversy in this court. The same is true as to the negligence charged against the defendant, and of the fact that the plaintiff's injuries were caused thereby, and that the plaintiff exercised ordinary care.

Appeal from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. B. R. Burroughs, Judge, presiding.

Messrs. G. & G. A. Koerner, for the appellant:

If it is in the power of one of the parties to furnish evidence, and he refuses to do so, that fact is taken against him, and he will be compelled to furnish such evidence. 1 Greenleaf on Corp. secs. 37, 82; *Frankfort* v. *Isbell*, 93 Ill. 382; *Walsh* v. *Sayre*, 52 How. 334; 2 Bishop on Marriage and Divorce, sec. 590, and notes; *Railroad Co.* v. *Hinlayson*, 18 Am. and Eng. R. R. Cases, 68; *Railroad Co.* v. *Holland*, 122 Ill. 467; *Railroad Co.* v. *Thul*, 10 Am. and Eng. R. R. Cases, 783.

The power of the court to order the examination of the plaintiff is admitted in these cases, as well as in *Schroeder* v. *Railroad Co.* 47 Iowa, 375. The power of the court to make such order is upheld by this court in *Frankfort* v. *Isbell*, 93 Ill. 382, and in *Railroad Co.* v. *Holland*, 122 id. 467.

The negligence complained of must have been the proximate cause of the injury to entitle plaintiff to recover. Wharton on Negligence, secs. 134, 137-140; *Railroad Co.* v. *Becker*, 76 Ill. 30; *Joliet* v. *Verley*, 35 id. 58; *Lacon* v. *Pope*, 48 id. 499.

The negligence charged in all the counts of the declaration is this: That the bridge and the approaches were not properly constructed, by reason of having no high railing between the foot-paths and the roadway; that therefore it was dangerous for foot passengers to cross, which fact the defendant knew, and the plaintiff did not know. This last allegation was a material one, for no doctrine is better settled than that when a party is aware of the danger of a passage or an obstruction in any highway, which he may readily avoid, he can not recover, no matter how great the negligence of the person or corporation may have been whose duty it was to keep highways in proper repair. Shearman & Redfield on Negligence, sec. 30; *Railroad Co.* v. *Gretzner*, 46 Ill. 78; *Railroad Co.* v.

*Sweeney,* 52 id. 326; *Railroad Co.* v. *Head,* 62 id. 233; *Railroad* v. *Lee,* 68 id. 578.

The payment of toll by plaintiff cuts no figure in the case. The instruction makes it a material matter. It concludes, that if the jury believes that while the plaintiff was using due care she was run into by a drove of mules and injured, as alleged in the declaration, the defendant was liable. It does not refer at all to the want of a railing. The words "injured as alleged" refer grammatically only to the hurt inflicted.

The third instruction asked for by defendant was refused by the court. This was clearly erroneous, as we have already shown that persons willingly choosing a dangerous road can not recover, even if the danger was owing to negligence of the defendant. In fact, our instruction did not go as far as the law, for we confined it to the case of an intervening party, which was not necessary.

Messrs. Baker & Canby, for the appellee:

Whether the plaintiff was injured, as alleged, is a question of fact, which is settled by the jury. In some States it is held that the court has the power to require a party to submit to a personal examination by physicians appointed by the court. This court has denied the power. *Parker* v. *Enslow,* 102 Ill. 272.

There is no pretense in the affidavit made in support of this motion that plaintiff was feigning an injury she had not received, and there is nothing in the evidence or circumstances to justify it. *Galesburg* v. *Benedict,* 22 Ill. App. 114.

If a person, while exercising due care, be injured by the combined result of an accident and the negligence of another, such as a city or village, and the injury would not have happened but for the negligence of such city or village, yet, although the accident be the primary cause of the injury, if it was one which common prudence and sagacity could not have foreseen and provided against, the negligent city or village will

be liable for the injury. *Joliet* v. *Verley,* 35 Ill. 358; *Carter-ville* v. *Cook,* 129 id. 152; *Bloomington* v. *Bay,* 48 id. 503; *Lacon* v. *Page,* 48 id. 500.

A person while upon the premises of another by invitation, express or implied, is entitled to due care on the part of the owner of such premises for his protection. *Fisher* v. *Jansen,* 30 Ill. App. 91; *Hayward* v. *Merrill,* 94 Ill. 349; Thompson on Negligence, 313; *Bennett* v. *Railroad Co.* 102 U. S. 577.

It may be true that the bridge company, by its charter, was not required to construct railings along its sidewalks, but if such railings were reasonably necessary to protect persons from injury, it was under a common law duty to construct and maintain them. *Bridge Ass.* v. *Loomis,* 20 Ill. 236; *Bridge Co.* v. *Jackson,* 114 Pa. St. 321; *Goodale* v. *Bridge Co.* 55 Mich. 413; *Turnpike Co.* v. *Cassell,* 66 Md. 419; *Turnpike Co.* v. *Crowther,* 63 id. 564; *Davis* v. *Plank Road Co.* 27 Vt. 604.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action on the case, brought by Mrs. Emaroy Miller against the St. Louis Bridge Company, to recover damages for a personal injury received by the plaintiff while walking along one of the approaches to the defendant's bridge at East St. Louis. The St. Louis Bridge, proper, terminates at the water's edge at East St. Louis, and from that point two iron bridges, called approaches, lead gradually down towards Fourth Street. On each of these approaches is a wagon road eighteen or twenty feet wide, and on each side of such wagon road is a foot path six or seven feet wide.

The plaintiff, on the 25th day of September, 1889, having paid to said bridge company the required toll or fare, walked across said bridge from St. Louis, and when she was walking along one of the foot-ways of the north approach, a drove of mules passed by going to East St. Louis. After passing her, they became frightened and stampeded, and turned and run

up the approach towards her, and three or four of them crossed into the foot-way where she stood clinging to the outside railing, and run against her, squeezing and crushing her against the railing, thereby inflicting upon her the injuries of which she complains.

The negligence charged in the plaintiff's declaration is, in substance, the failure on the part of the defendant, in constructing its bridge, to provide a suitable rail, bannister or other barrier, between the foot-way used by pedestrians, and the road-way provided and used for the passage of teams, wagons and live stock over the bridge, and in one count it is averred that, by reason of the absence of such guards, rails or barriers, it became the duty of the defendant, in the exercise of ordinary care, to make and enforce such rules and regulations for the passage of animals and live stock over said bridge as would reasonably protect and secure persons crossing the bridge on foot from injury from such animals and live stock while being driven across the bridge, and said count charges a neglect on the part of the defendant of that duty; and it is averred in each count, that by reason of the negligence of the defendant as charged therein, a drove of mules permitted by the defendant to be driven across said bridge ran against and upon the plaintiff, and pressed and squeezed her so violently against the north railing of the approach, as to greatly bruise and injure her, whereby her nervous system was greatly shocked and impaired, causing permanent injury to her spine and kidneys, and an impairment of her eye-sight, etc.

A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff for $1800. On appeal to the Appellate Court of the Fourth District said judgment was affirmed, and by a further appeal the record is now brought to this court for review.

The counsel for the defendant have filed with their briefs prepared for this court copies of the brief used by them in the Appellate Court, and it appears from those briefs that the

questions mainly insisted upon by them in that court were mere questions of fact in respect to which the judgment of the Appellate Court is conclusive. The fact that the plaintiff was injured in the manner and to the extent, and that her injuries were of the character and permanency alleged in the declaration, is not now open to controversy. The same thing must be said of the negligence charged against the defendant, and of the fact that the plaintiff's injuries were caused thereby, and that the plaintiff herself, at the time of her injury, was in the exercise of ordinary care. The errors reviewable here are errors of law, and the only questions of that character to which our attention is called are those which relate to the instructions given to the jury, and to the decision of the court denying the defendant's motion to require the plaintiff to submit to an examination of her person by medical experts.

Considering the last named question first, we find upon examination of the record, that several days before the cause was called for trial, a motion was filed by the defendant, "for a rule upon the plaintiff to submit to an examination of her person by medical experts, for the purpose of having the evidence on the trial of the cause as to the extent or the permanency of the injury she claims to have received." This motion was supported by an affidavit of one of the defendant's attorneys which stated simply that, on the day the motion was filed, he advised one of the attorneys for the plaintiff that the defendant desired to have the person of the plaintiff examined by competent experts, learned in the profession of medicine and surgery, for the purpose of ascertaining the extent of the injuries complained of in the plaintiff's declaration, and that said attorney then and there stated to him that the plaintiff would not allow such examination without an order of the court. No other proof was offered in support of said motion, and the court thereupon heard the motion and denied it, and to that decision the defendant's counsel duly excepted.

As we view the case, it seems quite unnecessary for us to express any opinion upon the general question as to whether, under proper circumstances, and where it is shown by satisfactory proof that the due administration of justice requires such action, a court may not have the power to compel a plaintiff, in an action for a personal injury, to submit to such personal examination as may be necessary for the purpose of furnishing reliable and satisfactory evidence of the nature, extent and permanency of the injury complained of. It is sufficient to say, that here no case is made calling for the exercise of such power, if it in fact exists. The theory upon which said motion was interposed seems to have been, that requiring such examination was a matter of right, and that an order requiring it should be granted as a matter of course. Counsel appear to have labored under the impression that their right to require the plaintiff to submit to an examination by physicians was practically co-extensive with their right to compel her to appear and testify as a witness. As a consequence, no proof whatever was presented showing the necessity or propriety of such examination, or that the ends of justice would in the least be promoted thereby. It was not shown that the defendant had not already at hand abundant testimony to prove the nature and permanency of the plaintiff's injuries, or that she had not already been examined by a sufficient number of competent and trustworthy physicians whose testimony was available, or that her injuries were of such character that a personal examination would have been likely to throw any light upon the question of their severity or probable permanency.

As we have seen, the only fact shown was, that the defendant's attorney had advised the plaintiff's attorney that the defendant desired to have an examination made, "for the purpose of ascertaining the extent and permanency of the injuries complained of in the plaintiff's declaration," and that the plaintiff's attorney had replied that the plaintiff would not

permit such examination except in obedience to an order of court. It will be observed that the purpose of the examination expressed to the plaintiff's attorney was not to obtain evidence to be used upon the trial, but to ascertain what the facts were. Clearly there could be no right to an examination for that purpose alone, and the plaintiff's attorney very properly refused to permit it to be made.

It may also be remarked that, as no proof was offered showing the necessity of the evidence to be derived from such personal examination, nothing appeared from which it could be seen that the defendant would be prejudiced by the denial of its motion. As the contrary was not shown, the court had a right to presume that the defendant had other evidence as to the same facts at hand, and was in no way dependent upon the results of a personal examination to make out its defense. Without intending then to intimate an opinion that, under any circumstances, the court could properly have required the plaintiff to submit to the examination asked for, we are fully satisfied that the motion, as presented, was properly denied.

The only instruction given to the jury at the instance of the plaintiff of which complaint is made is the following:

"The court instructs the jury, that if they believe, from the evidence, the defendant was possessed of and using and operating a bridge and approaches thereto, across the Mississippi river, as alleged in the declaration, and was taking toll from passengers for the privilege of crossing the same on foot, then it was the duty of the defendant to provide reasonable safeguards to protect from injury persons who might cross said bridge on foot; and if you further believe, from the evidence, plaintiff became a passenger on said bridge, and had paid defendant fare demanded of her for crossing on foot from St. Louis to East St. Louis, that plaintiff, while walking down the north side of the eastern approach of said bridge, on the footwalk provided by the defendant for that purpose, with due care and caution on her part, was run into by a drove of mules

and injured, as alleged in the declaration, the defendant would be liable, and your verdict should be for the plaintiff, in such sum of damages as you may believe, from the evidence, she has sustained, not exceeding the amount sued for."

This instruction is said to be erroneous because it makes the taking of toll by the bridge company a material element in the case. The payment of toll by the plaintiff is alleged in the declaration and is shown by the evidence, and we think it was a proper matter to be taken into consideration by the jury in passing upon the question of the defendant's negligence. Clearly a bridge company authorized to construct and maintain a toll bridge and to collect and receive tolls of such persons as make use of it, should be held to a higher degree of diligence in caring for the safety of passengers crossing the bridge, than a corporation performing that service for the public gratuitously would be.

The instruction, however, would seem to be somewhat ambiguous in failing to state clearly, as a part of its hypothesis, that the defendant was negligent as charged in the declaration, and that the plaintiff's injury was caused by such negligence. The hypothesis, so far as it relates to this subject, is, that the plaintiff, while walking along the approach to the bridge, on the foot-way provided by the defendant for that purpose, with due care and caution on her part, was run into by a drove of mules and injured, as alleged in the declaration. The phrase, "was injured as alleged in the declaration," may be understood to mean merely that she received the injury alleged in the declaration, without reference to the allegations of negligence, or it may mean that she received said injury in the manner and by reason of the causes alleged in the declaration. This ambiguity would doubtless have raised a serious question if the instruction had stood alone, for the jury might then have been misled into supposing that the plaintiff might recover upon mere proof that she received her injury by being run into by a drove of mules on the bridge, without proof that such injury

was the result of the defendant's negligence.   But when the instructions given at the instance of the defendant are considered, it is impossible to suppose that they were misled on this point, as several of said instructions distinctly hold that, in order to recover, it is incumbent upon the plaintiff to prove the defendant's negligence, and that such negligence was the cause of the plaintiff's injury.   Thus, reference may be made to the defendant's second instruction which was as follows:

"2.  The burden of proof lies on the plaintiff to show that the bridge was improperly constructed, or that there was negligence on the part of the bridge company, by which negligence she was injured.   And if the jury believe, from the evidence, that she was injured directly and primarily by the negligence or carelessness of third persons not employed by or under control of the bridge company, she can not recover damages against the said bridge company."

Three instructions were asked by the defendant which were refused, and their refusal is assigned for error.   The first of these instructions is in substance that if the plaintiff knew the character of the bridge and that there were no barriers or railings between the road-way and the foot-path, and chose the bridge for crossing the river, she can not recover, if she was injured by the carelessness or negligence of third persons not under the control of the defendant.   This instruction, as applied to the facts in this case, embraces two propositions, both of which are erroneous.   The first is, that if the plaintiff knew of the improper or dangerous construction of the bridge, her using it as a means of crossing the river, was negligence *per se* on her part.   Her choosing a dangerous foot-path, knowing it to be dangerous, may be evidence of negligence, but it can not be pronounced negligence as a matter of law.   The second is, that the co-operation with the defendant of other persons over which it had no control, in producing the injury, would exonerate the defendant from responsibility.   The evidence tends to show that the bridge over which droves of do-

mestic animals were likely to be driven, was constructed with
no sufficient railings or barriers between the carriage-way and
the foot-path to protect pedestrians on the foot-path from in-
jury likely to be caused by droves of animals passing along
the carriage-way.   The evidence also tends to show that per-
sons over whom the defendant had, or at least exercised, no
control, undertook to take a drove of mules over the bridge,
and that by reason of a want of a proper railing or barrier,
some of the mules got over into the foot-path along which the
plaintiff was walking and injured her.   There is a sense in
which it may be said that the injury was caused by the persons
in charge of the mules, since if they had not undertaken to
drive said mules over the bridge, the injury would manifestly
not have happened.   But this is not inconsistent with the
further fact that the injury was also caused by the negligence
of the defendant in not providing proper railings or barriers,
and it is only in the sense here indicated that the instruction,
in order to be applicable to the facts as proved, could have
referred to the injury as being caused by the persons in charge
of the mules.   In legal contemplation the case is one where
the injury was inflicted by the co-operating negligence of the
bridge company and the persons in charge of the mules, and
the rule is well settled "that a person contributing to a tort,
whether his fellow contributors are men, natural or other forces,
or things, is responsible for the whole, the same as though he
had done all without help." *Village of Centerville* v. *Cook,* 129
Ill. 152; Bishop's Non-Contract Law, sec. 518.   The propo-
sition of the instruction then that the plaintiff could not re-
cover if she was injured by third persons not under the control
of the defendant, when applied to the evidence before the jury,
was clearly misleading and erroneous.

The second refused instruction was, in substance, that un-
less the bridge company was by law or its charter bound to
construct a railing along the foot-path on its bridge, the ab-
sence of such railing was not negligence.   This was tanta-

mount to holding that no duty as to care in the construction, maintenance or supervision of its bridge rested upon the bridge company except such as were specifically indicated or commanded by positive law or by the provisions of its charter. That view is clearly untenable. The legal duty of the bridge company was to exercise reasonable and ordinary care and prudence in the construction, management and supervision of its bridge for the safety and protection of persons using it, and it was its duty to make reasonable provisions for the prevention of injuries from causes likely to arise in the ordinary use of the bridge, although no specific expedient for the prevention of such injuries may have been indicated or commanded either by the law or the defendant's charter. And if the construction of a railing or other barrier between the carriage-road and foot-path was the most obvious and appropriate expedient for preventing injuries which, in the ordinary use of the bridge, were likely to happen to foot passengers, it was its duty to construct and maintain such railings or other barriers.

The third refused instruction held, among other things, that although there might have been negligence on the part of the defendant, yet if there was intervening negligence on the part of the plaintiff, or on the part of third persons, without which latter the misfortune to the plaintiff could not have happened, the plaintiff could not recover. What was said in relation to the first refused instruction applies here. Where several tort-feasors have co-operated to the same end, either may be held responsible for the entire tort. The fact that the injury could not have happened without the wrongful act of one, is not a test of the non-responsibility of the other. A tort may be of such character as to require for its perpetration the concurrent action of several, so that if either one fails in his part, the tort is not committed. In such case it may properly be said that but for the wrongful act of either of the tort-feasors, the wrong would not have been committed. But that fact can not

be urged in exoneration of the others. They are all liable jointly and severally for the entire tort. See *Consolidated Ice Machine Co.* v. *Keifer*, 134 Ill. 481.

On careful examination of the entire record we find no material error. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*