City of South Bend v. Turner.

---

THE CITY OF SOUTH BEND ET AL. *v.* TURNER, BY HIS NEXT FRIEND.

[No. 18,929. Filed April 16, 1901.]

APPEAL AND ERROR.—*Joint Exception.*—Where an exception to the ruling of the court on demurrer to complaint was made jointly by defendants, available error cannot be predicated thereon by one of the defendants on appeal. *p. 421.*

SAME.—*Complaint.*—*Questioned for First Time on Appeal* —The total absence from the complaint of an averment of a fact essential to the existence of the cause of action, or the averment of a fact that absolutely destroys plaintiff's right of recovery, may be raised for the first time on appeal by an independent assignment of error, under §346 Burns 1894, but mere uncertainty, or inadequacy of averment, will be deemed to have been waived by a defendant who proceeds with the trial to final judgment without objection. *p. 421.*

SAME.—*Joint Assignment.*—Where an assignment of error challenges the complaint as an entirety, and any paragraph thereof is sufficient, the assignment must fail. *pp. 421, 422.*

MUNICIPAL CORPORATIONS.—*Streets.*—*Personal Injuries.*—The fact that a street was so obstructed by the contractor in the construction of a sewer as to be inconsistent with public use will not relieve the city from liability for a personal injury, when it is shown that the city had notice, or might have had notice by the exercise of proper oversight, that its licensee had acted in a negligent manner and left its streets in an unsafe and dangerous condition. *p. 422.*

APPEAL AND ERROR. — *Verdict.* — *Answers to Interrogatories.* — All reasonable presumptions must be indulged against the special answers and in support of the general verdict, and if the general verdict, thus aided, is not in irreconcilable conflict with the answers, it must stand. *p. 423.*

City of South Bend *v.* Turner.

CONTRIBUTORY NEGLIGENCE.—*Personal Injury of Child.*—A motion for judgment for defendant on answers to interrogatories, in an action for personal injuries by a child six and a half years of age on the ground that the answers showed that plaintiff was guilty of contributory negligence was properly overruled, where it was shown that the child was playing on a sand pile in the street and fell into a sewer through a manhole near by, which had been left uncovered continuously for two weeks with the knowledge of defendants, and that the child did not have intelligence enough to know the danger of the open manhole. *pp. 423, 424.*

EXAMINATION OF PERSON.—*Personal Injuries.—Practice.*—In an action for a personal injury the court has power to order an examination of the plaintiff as to the injuries complained of, upon a proper application therefor by defendant before entering upon the trial, such motion being addressed to the sound discretion of the court, and the exercise of such discretion is reviewable on appeal, and correctible in cases of abuse of discretion. *Pennsylvania Co.* v. *Newmeyer*, 129 Ind. 401, overruled. *pp. 424-432.*

From the Marshall Circuit Court. *Reversed.*

*O. M. Cunningham, T. E. Howard* and *J. G. Orr,* for appellants.

*F. J. L. Meyer* and *C. P. Drummond,* for appellee.

HADLEY, J.—Suit by appellee to recover damages for personal injuries. The facts set forth in the complaint are substantially as follows: On the 8th day of April, 1894, the appellants, being, respectively, a municipal and private corporation, were engaged in the construction of a trunk sewer for the defendant city through one of its public streets, declining northward and terminating in St. Joseph river; that at a point near its terminus the appellants constructed a manhole, circular in form, and two and one-half feet in diameter, near the center of a public street crossing, thus constituting a means of communication with said sewer from the surface of the street to the bottom of said sewer, a distance of twenty-nine feet; that said manhole was carelessly and negligently permitted by the appellants to be open and uncovered on said day, and was and had been carelessly and negligently permitted by the defendants to be and remain open and uncovered continuously prior thereto

for many days and weeks, without any signal or warning of any kind, and without any protection to persons lawfully upon the street; that said sewer from its mouth, or terminus, to the manhole, and for some distance beyond, had been in part completed, and large piles of sand had been piled upon the street where the sewer was completed near the manhole by the defendants, and had been by them carelessly and negligently permitted to remain there, and were calculated to and did attract children for the purpose of engaging in play in the sand; that the children of the neighborhood were accustomed, with the knowledge of the defendants, to play in the street with said sand piles; that the plaintiff on said day, being six and a half years of age, was so engaged at play with the said sand piles, and at the time did not know of the open condition of the manhole, and while so engaged in play, and while in the exercise of due care and caution, did, by reason of the negligence of the defendants as aforesaid, fall into said open manhole, and was precipitated to the bottom of the sewer, without fault, and without any warning by the defendants of the danger existing by reason of the open manhole, and whereby he was greatly injured.

The complaint is in four paragraphs. The first was withdrawn. The second and third are in substance the same. The fourth charges that the manhole at the time of the accident was and had been for many days and weeks negligently suffered by the defendants to be and remain insufficiently covered, etc. The joint demurrer of the defendants and the separate demurrer of the defendant city to each paragraph of the complaint were overruled, and a joint exception to both rulings reserved. Upon issues joined, the jury returned a general verdict for appellee and answers to divers interrogatories. The city alone appeals, and assigns for error (1) the insufficiency of the facts stated to constitute a cause of action against it; (2) the action of the court in overruling its demurrer to each paragraph of the

complaint; (3) in overruling its separate motion for judgment in its favor on the answers to interrogatories, and (4) in the overruling of its separate motion for a new trial.

No question upon the complaint is properly presented by the demurrers. The record shows that "the defendants demur to each paragraph of the complaint," etc. Then follow three separate papers, being the separate demurrers of the defendant city to each the second, third, and fourth paragraphs of the complaint, and the record then proceeds: "Which demurrers the court overruled, to which ruling of the court defendants except." Exceptions taken thus in gross reserve no question and an assignment of error predicated thereon by one of the exceptors is futile. *Johnson* v. *McCulloch,* 89 Ind. 270, 273; *Western Union Tel. Co.* v. *Trissal,* 98 Ind. 566, 570; *Walter* v. *Walter,* 117 Ind. 247, 249; Elliott's App. Proc., §788.

Appellant, however, makes an independent assignment of error that the complaint does not state facts sufficient to constitute a cause of action against it. The total absence from the complaint of any averment of some fact or facts essential to the existence of the cause of action, or the presence of some averment that absolutely destroys the plaintiffs right of recovery, may be for the first time raised in this court by an independent assignment of errors under §346 of the code—§346 Burns 1894, §343 R. S. 1881 and Horner 1897,—but mere uncertainty, or inadequacy of averment, such as might have been amended and cured upon motion seasonably made, will be deemed to have been waived by a defendant who proceeds with the trial to final judgment without objection, and who brings his complaint for the first time, after the cause of action has been strengthened by the verdict of a jury, and the presumptions indulged in favor of the decisions of the trial court upon motions for judgment, and for a new trial. *Shoemaker* v. *Williamson, ante,* 384, and authorities cited; *Kinney* v. *Dodge,* 101 Ind. 573; *Smith* v. *Smith,* 106 Ind. 43, 45. This assignment of error

challenges the complaint as an entirety, and if any paragraph thereof is sufficient, the assignment must fail. *Buchanan* v. *Lee,* 69 Ind. 117; *Caress* v. *Foster,* 62 Ind. 145; *Miller* v. *Billingsly,* 41 Ind. 489, 492.

The complaint avers that the defendants were constructing the sewer; that they had constructed the manhole; that the defendants negligently permitted the manhole to be and remain open and uncovered on the day of the plaintiff's injury, and so to be and remain open and uncovered continuously for several weeks prior thereto, and negligently permitted a large sand pile, which defendants had produced, to be and remain on said day and for several weeks prior thereto near the manhole, and at a point on said sewer where the same was completed, with the knowledge that the children in the neighborhood, including the plaintiff, were accustomed to play in said sand piles. There is no suggestion in the complaint that the defendant construction company was an independent contractor, nor that it had the exclusive possession of the street; nor does it appear from anything averred, except for the presence of the sand piles, that the public was prevented or in any way denied the usual right of play or travel in the street. Even assuming, as appellee argues, that the facts pleaded show that the street was so obstructed by the construction of the sewer as to be inconsistent with public use, and that the construction company was necessarily in the exclusive possession of the street, the city would not thereby be relieved of liability when it is shown that it had notice, or might have had notice by the exercise of proper oversight, that its licensee had acted in a negligent manner and left its streets in an unsafe and dangerous condition. *Staldter* v. *City of Huntington,* 153 Ind. 354; *Senhenn* v. *City of Evansville,* 140 Ind. 675; *City of Indianapolis* v. *Doherty,* 71 Ind. 5; Elliott's Roads and Streets (2nd ed.) §634. We are unable to see why the complaint is not sufficient against the city if tested by demurrer, and it is clearly so when questioned for the first time in this court.

With respect to the motion for judgment on the answers to interrogatories notwithstanding the general verdict the rule is that all reasonable presumptions must be indulged against the special answers and in support of the general verdict, and if the general verdict, thus aided, is not in irreconcilable conflict with the answers, it must stand. *Louisville, etc., R. Co. v. Creek,* 130 Ind. 139, 142, 14 L. R. A. 733; *British-American, etc., Co. v. Wilson,* 132 Ind. 278, 283; *Louisville, etc., R. Co. v. Schmidt,* 134 Ind. 16; *Consolidated Stone Co. v. Summit,* 152 Ind. 297. The reason of the rule is that the jury is required to pronounce upon *all* the issuable facts proved in the case, while the court in testing the force of isolated facts disclosed by answers to interrogatories does not know, and cannot know, what other facts touching the same matters were rightfully before the jury to justify their verdict. Therefore, in conceding to the jury the presumption of right judgment, to overthrow its general verdict, the special facts returned must be of such a nature as to exclude the possible existence of other controlling facts, provable under the issues, relating to the same subject. The answers show that the construction company had exclusive possession of the street at the manhole for the purpose of building the sewer; that said company frequently warned boys away from playing in the sand pile near the open manhole; that the plaintiff knew that the manhole was uncovered, and that he was six and a half years of age, and from the answers it is contended that it affirmatively appears that the plaintiff was guilty of contributory negligence, and the city free from liability. If there were no other answers supportive of the general verdict, we could not approve the contention. We could not assume that a boy six and a half years of age was so advanced in knowledge as to be able to know when he was in a place where he ought not to be, and to appreciate the evidences and presence of danger; *Cleveland, etc., R. Co. v. Klee,* 154 Ind. 430, nor would the isolated fact that the construction company had the exclusive

possession of the street for the purpose of building the sewer prevail, as a defense for the city, against the presumptions that would arise under the averments of the complaint that both the construction company and city carelessly permitted the manhole to remain open and uncovered near a sand pile that they knew was attractive to children, and to which they knew children were attracted for play continuously for many weeks. But by other answers it is found that the plaintiff at the time of the accident did not have intelligence enough to know the danger of the open manhole, nor was it shown that he was ever warned of the danger by any one. It is further shown that the manhole had been completed for four weeks; that it was within four feet of a sand pile seven feet high, and had been left continuously for two weeks uncovered, with the knowledge of both the city and the construction company, and with their further knowledge that the sand was attractive to the children of the neighborhood, and that they were attracted to it for the purpose of play; that there were no guards or barricades about the manhole, nor on the street or sidewalks, and the street from the manhole to the mouth of the sewer was for two weeks prior to the accident traveled by hundreds of people; that the sewer was completed from its mouth to the manhole, and for 300 feet beyond, at the time of the accident, except the leveling of the street grade. The motion for judgment upon the answers to interrogatories was properly overruled.

The first ground urged for a new trial is the refusal of the court, upon appellants' motion, to order a physical examination of the plaintiff. Before the commencement of the trial appellant filed and presented its verified motion that the court select some competent, responsible, and unbiased physician and surgeon of the county to examine the head, leg, and eye of the plaintiff before the beginning of the trial, for the purpose of discovering and giving testimony as to the true character and extent of his injuries, and their probable effect as to permanency upon his mind and person;

that the plaintiff is a child nine years of age, and was but seven years of age when he received the alleged injuries, and the defendant has had no opportunity and has been wholly unable to inform itself upon the subject of said injuries; that the plaintiff asserts in his complaint that his skull was cracked, his eyes injured, his leg broken, his nervous system impaired, and that his said injuries are great and permanent; that the plaintiff will produce as a witness in his own behalf the physician who attended him in his illness, and the defendant is totally unable to produce any witness who has examined the plaintiff and who can state from medical knowledge the nature and extent of his injuries, and the probability or improbability of their permanency; that the plaintiff's father be permitted to be present at such examination; that such examination will be able to determine the true nature and extent and probable effect of such injuries, and may be made without pain, humiliation, or danger to the plaintiff.

The overruling of this motion presents a question of some difficulty, and upon which the courts of the country are not entirely agreed. It is one, too, that has but recently engaged the attention of the courts of last resort. The fundamental principle, however, is an ancient doctrine of the common law, limited, it is true, to a few classes of cases, among them mayhem and divorce cases, wherein impotency was charged; but as the sources of evidence have been extended to parties and in many other ways, its application has been expanded to meet new conditions. The doctrine rests upon the principle that justice is the object of judicial investigation, and that courts charged with its administration, as a necessary means of attaining that end, have inherent power to require the production of the most infallible evidence. That its application to personal injury cases is a modern practice does not disprove its common law origin. As was well said by Justice Brewer in his dissenting opinion in *Union, etc., Co.* v. *Botsford,* 141 U. S. 250, 258, 11 Sup. Ct. 1000, 35 L. Ed.

734: "The silence of common law authorities upon the question in cases of this kind proves little or nothing. The number of actions to recover damages, in early days, was, compared with later times, limited; and very few of those difficult questions as to the nature and extent of the injuries, which now form an important part of such litigation, were then presented to the courts. If an examination was asked, doubtless it was conceded without objection, as one of those matters the right to which was beyond dispute. Certainly the power of the courts and of the common law courts to compel a personal examination was, in many cases, often exercised and unchallenged. Indeed, wherever the interests of justice seemed to require such an examination, it was ordered." Beginning with the case of *Loyd* v. *Hannibal, etc., R. Co.*, 53 Mo. 509, decided in 1873, there have followed many adjudications upon the power of the trial court to order a physical examination of the plaintiff in suits for personal injuries upon request of the defendant. In this first case, the power, upon slight consideration, was denied. In 1877, in the well considered case of *Schroeder* v. *Chicago, etc., R. Co.*, 47 Iowa 375, the power was affirmed. Following this lead, the states of Alabama, Arkansas, Georgia, Kansas, Kentucky, Michigan, Missouri, Minnesota, Nebraska, Pennsylvania, Ohio, Texas, and Wisconsin, have reasserted the rule as announced in the Iowa case. *Alabama, etc., R. Co.* v. *Hill* (1885), 90 Ala. 71, 8 South. 90, 9 L. R. A. 442; *King* v. *State* (1895), 100 Ala. 85, 14 South. 878; *Sibley* v. *Smith* (1885), 46 Ark. 275; *St. Louis, etc., R. Co.* v. *Dobbins* (1893), 60 Ark. 481, 30 S. W. 887, 31 S. W. 147; *Richmond, etc., R. Co.* v. *Childress* (1889), 82 Ga. 719, 9 S. E. 602, 3 L. R. A. 808; *Hall* v. *Town of Manson* (1896), 99 Iowa 698, 68 N. W. 922, 34 L. R. A. 207; *Atchison, etc., R. Co.* v. *Thul* (1883), 29 Kan. 466; *Belt Electric Co.* v. *Allen* (1898 Ky.), 44 S. W. 89; *Graves* v. *City of Battle Creek* (1893), 95 Mich. 266, 54 N. W. 757; *Shepard* v. *Missouri, etc., R. Co.* (1885), 85 Mo. 629;

*Sidekum* v. *Wabash, etc., R. Co.* (1887), 93 Mo. 400, 4
S. W. 701; *Owens* v. *Kansas City, etc., R. Co.* (1888), 95
Mo. 169, 8 S. W. 350; *Hatfield* v. *St. Paul, etc., R. Co.*
(1885), 33 Minn. 130, 22 N. W. 176; *Stuart* v. *Havens,* 17
Neb. 211 (1885), 22 N. W. 419; *Hess* v. *Lake Shore, etc.,
R. Co.* (1890), 7 Pa. C. C. 565; *Miami, etc., Co.* v. *Baily,*
(1881), 37 Ohio St. 104; *Chicago, etc., R. Co.* v. *Langston*
(1898), 19 Tex. Civ. App. 568, 47 S. W. 1027, 48 S. W.
610; *White* v. *Milwaukee, etc., R. Co.* (1884), 61 Wis. 536,
21 N. W. 524; *O'Brien* v. *City of LaCrosse* (1898), 99 Wis.
421, 75 N. W. 81, 40 L. R. A. 831. These cases assert the
doctrine that courts are instituted by the state to administer
impartial justice to contending parties. In such contests it is
the duty of the court to bestow upon the litigants equal and
exact justice. This cannot be done without the court first
obtaining the exact and full truth concerning the matters in
controversy. Hence from this duty of the court to dispense
exact justice is essentially implied all power necessary to its
performance, which includes the power to make subservient
to its order all persons and things that will afford the most
reliable evidence. In *quasi* recognition of this power it is
the law of this State, and other states so far as we have
observed, that the court may permit the plaintiff in both
civil and criminal cases to exhibit to the jury such weapons,
implements, clothing, and wounds upon his person, or upon
the person of the prosecuting witness, as are asserted to be
the means, or effects, of the violence complained of. *Indi-
ana Car Co.* v. *Parker,* 100 Ind. 181, 199; *Louisville, etc.,
R. Co.* v. *Wood,* 113 Ind. 544; *Hess* v. *Lowrey,* 122 Ind.
225, 232, 17 Am. St. 355; *Citizens St. R. Co.* v. *Willoeby,*
134 Ind. 563; *Thrawley* v. *State,* 153 Ind. 375.

Such things, when a part of the *res gestae,* serve a most
useful purpose in assisting the jury to a proper application
of the testimony. They are unerring exponents of the truth
of the particular fact, and it may not be controverted that
when the nature, extent, and effect, of a palpable injury is

in dispute—not involving scientific questions—the jury may arrive at a more accurate knowledge of the truth by the aid of their own senses than by a verbal description of the observations of others. This being well known to a plaintiff he is certain to avail himself of this advantage in the trial when the truth will be beneficial to him, and if impartial justice is to be administered we see no way of its attainment in all cases if an important source of evidence is open to one and closed to the other. That the question embraces the exercise of scientific knowledge makes no difference. Physicians and surgeons, however honest and learned, are fallible, and equally, with other honest and honorable persons, subject to the unconscious influence of friendship and personal interest—the latter, in surgery cases, involving not only professional reputation, but pecuniary liability. Besides, surgeons of equal learning and honesty may not diagnose an injury in the same way. They may not be equally strong in perception, or equally accurate in observation, or in measurements, and thus form different judgments of the existing conditions, which of necessity must constitute the basis of their scientific opinions, and it may be readily seen that if a defendant must make his defense against the expert opinions of the plaintiff's chosen surgeons, without an opportunity of testing the verity of the basis for such opinions, he may be placed at disastrous disadvantage such as the law cannot and does not sanction.

The cases above cited as affirming the existence of the power establish the following propositions: (1) That trial courts have the power to order the medical examination by experts of the injured parts of a plaintiff who is seeking to recover damages therefor; (2) that a defendant has no absolute right to demand the enforcement of such an order, but the motion therefor is addressed to the sound discretion of the trial court; (3) that the exercise of such discretion is reviewable on appeal, and correctible in cases of abuse; (4) that the examination should be applied for and

City of South Bend v. Turner.

made before entering upon the trial, and should be ordered and conducted under the direction of the court, whenever it fairly appears that the ends of justice require a more certain ascertainment of important facts which can only be disclosed, or fully elucidated, by such an examination, and such an examination may be made without danger to the plaintiff's life or health, or the infliction of serious pain; (5) that the refusal of the motion, when the circumstances appearing in the record present a reasonably clear case for the examination under the rules stated is such an abuse of discretion in the trial court as will operate to reverse a judgment for the plaintiff; (6) that such an order may be enforced, not by punishment as for a contempt, but by delaying or dismissing the proceeding.

The discretion lodged in the trial court, as fairly deducible from the decisions, is a sound discretion based solely upon legal considerations. When serious and permanent injuries are claimed by the plaintiff, and he, or she, has submitted to examination by a chosen physician, or surgeon, who appears as a witness in plaintiff's behalf, and the nature, extent, and effect of the injury is to be deduced from objective conditions, and so fully from no other source, no degree of sentiment will justify a denial of the motion. When it becomes a question of probable violence to the refined and delicate feelings of the plaintiff on the one hand, and probable injustice to the defendant on the other, the law will not hesitate,—the court in making such orders, with respect to time, place, and persons, in every case, having such due regard for the feelings of the plaintiff and proprieties of the case as the ends of justice will permit.

So far as our researches have revealed the federal Supreme Court, Justices Brewer and Brown dissenting, now stand alone in denial of the power. *Union, etc., Co.* v. *Botsford,* 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734.

The decisions of New York were confused, and the rule both affirmed and denied in inferior courts, until established

by legislative enactment in 1893. Chap. 721 Laws 1893, §873 Code Civ. Prac.

The power was first denied in the state of Missouri in Loyd's case, *supra*, in 1873, but affirmed by the same court in Shepard's case, *supra*, in 1885, and affirmance has been adhered to in many subsequent cases.

In Illinois the Supreme Court in 1882 in *Parker* v. *Enslow*, 102 Ill. 272, disposed of the question in a single line as follows: "The court had no power to make or enforce such an order"; and in subsequent decisions, while not expressly overruling the Parker case, recognize the existence of the power, when properly and timely invoked. See *Chicago, etc., R. Co.* v. *Holland* (1887), 122 Ill. 461, 13 N. E. 145; *St. Louis Bridge Co.* v. *Miller* (1891), 138 Ill. 465, 28 N. E. 1091.

The decisions in Indiana, in the words of the majority opinion of the federal Supreme Court in the Botsford case, *supra*, "are conflicting and indecisive." In the first appearance of the question before this court in any form, in 1885, in *Louisville, etc., R. Co.* v. *Falvey*, 104 Ind. 409, 416, 417, in ruling upon the competency of evidence touching the details of a physical examination of the plaintiff under an order of court, made upon the defendant's motion, the right of the trial court to make the order is not questioned.

*Kern* v. *Bridwell*, 119 Ind. 226, 12 Am. St. 409, was an action for slander for charging the plaintiff with lewdness. The court refused to order the plaintiff to submit her person to examination by medical experts. The question related to a collateral matter and not to the subject-matter of the suit,—to a source of evidence not shown to be reliable nor useful to the defendant in his answer of justification, and should not be accepted as an authority in a suit by a plaintiff to recover damages for a particular injury to his person.

The question came before the court in *Hess* v. *Lowrey*, 122 Ind. 225, and the request for an examination denied because

untimely made. The court, by Mitchell, J., said: "It is undoubtedly true that the court may in its discretion in a proper case, if application is seasonably made, require the plaintiff to submit his person to a reasonable examination by competent physicians and surgeons when necessary to ascertain the nature, extent and permanency of injuries."

The case of *Terre Haute, etc., R. Co.* v. *Brunker,* 128 Ind. 542 presenting a like question was ruled by *Hess* v. *Lowrey, supra.*

In *Pennsylvania Co.* v. *Newmeyer,* 129 Ind. 401, 409, the question we have here came before the court for decision, and it was there held that the power of the court to order an examination did not exist, the court regarding what was said in *Hess* v. *Lowrey* as *obiter.* Upon further, and perhaps fuller, consideration of the question, we are satisfied that the decision in the Newmeyer case, upon this point, is refuted by the great weight of authority, and it is therefore disapproved. It is insisted that the question should be ruled by the decision of the federal Supreme Court, but adopting as our own the language used by Montgomery, J., in *Graves* v. *Battle Creek,* 95 Mich. 266, 54 N. W. 757, with respect to the Botsford decision: "This decision is entitled to very great weight; but in view of the manifest justice of a requirement that the plaintiff in case of personal injury shall produce the best evidence attainable we think this case should not be permitted to stem the otherwise almost unbroken current of authority upon the subject."

In the case at bar the motion of the defendant was timely; the injuries were alleged to be serious and permanent, as affecting both the body and mind of the plaintiff; the plaintiff would produce in his own behalf his attending physician; the defendant had no opportunity to inspect the injuries, or in any way inform itself as to their nature, extent, and effect, and was wholly unable to contest, if it should be contested, the testimony of the plaintiff's expert witness; that an examination by skilled and unbiased surgeons would

enable them to determine the nature and extent of the injuries, and, at least in a degree, to determine their effect and permanency, and could be made without danger or pain to the plaintiff. The application was made before the trial began, more than two years after the infliction of the injuries, and clearly presents a case where the trial court should have exercised its discretion in favor of the motion. For error of the court in overruling the motion, the appeal must be sustained. Judgment reversed, with instructions to grant appellant's motion for a new trial.