CARLOS F. BAHR, Plaintiff and Appellee, *v.* AMERICAN RAILROAD COMPANY OF PUERTO RICO, Defendant and Appellant.

No. 8518. Argued November 18, 1942.—Decided May 17, 1943.

886

*Mariano Acosta Velarde* for appellant. *José Martín Betancourt* and *Luis A. Negrón López* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

Carlos F. Bahr filed a complaint against the American Railroad Company of Puerto Rico, to recover damages for the sum of $21,500, alleged to have been suffered when one of the trains of the defendant corporation collided with his automobile, which he was driving. The facts alleged by the plaintiff can be thus summarized:

On November 19, 1934, plaintiff-appellee Carlos F. Bahr was driving his automobile on the Lajas–Cabo Rojo Insular Road. When he reached kilometer 4, hectometer 8 of said road, he turned left to enter a side road that, crossing the railroad, leads to the ".Firmeza" estate, where plaintiff resided at the time. In crossing, he was hit by engine number 57, property of the defendant corporation, his automobile being damaged and plaintiff severely injured.

Plaintiff alleges that the accident was due solely to the negligence of the engineer of the defendant, who, acting as an employee of the same, failed to blow the whistle or sound the bell while approaching the crossing while driving the locomotive at a great speed and failed to reduce the same when approaching the place where the accident occurred, and also to defendant's failure to provide chains or gates at the crossing. Plaintiff also alleged that the defendant incurred in the above-pointed omissions, in spite of the fact that said defendant as well as its employees knew that the side road at the crossing is used by the public with a continuous traffic of pedestrians and vehicles going through it; that the visibility in that place is very poor, and that the crossing is very near a curve in the railroad tracks.

Defendant denied in its answer having been guilty of negligence, alleging, as a special defense the contributory negligence of the plaintiff as the immediate and proximate cause of the accident.

Having been ordered to pay the defendant damages amounting to $9,100, plus costs and disbursements, and $500 for attorneys' fees, the defendant corporation filed the present appeal assigning to the lower court the commission of eleven errors. The first three read thus:

"1. Upon allowing the plaintiff, over the objection of the defendant, to amend his complaint at the trial to the effect that instead of alleging that the defendant is a corporation organized according to the laws of Puerto Rico, it would read that it is organized under the laws of the State of New York.

"2. Upon stating that the action exercised by the plaintiff does not violate the Statute of Limitations.

"3. Upon dismissing defendant's motion to the effect that plaintiff be examined before and during the trial by medical experts appointed by the court."

 The first two assignments can be jointly considered. At the beginning of the trial the plaintiff asked the court for permission to amend the complaint to the effect that instead of alleging that the defendant, The American Railroad Company of Porto Rico, is a corporation organized under the laws of Puerto Rico, it would read that it is organized under the laws of the State of New York. The defendant did not object to the amendment, and the court granted it.

When the defendant began to offer its evidence it asked permission of the court to amend its answer alleging as special defense the barring of the action exercised by the plaintiff, since "the action against The American Railroad Company of Porto Rico, a corporation organized according to the laws of the State of New York, had been filed by virtue of the amendment to the complaint on September 27, 1939, there having therefore elapsed more than a year from the time the plaintiff learned of the damage to the filing of the complaint against the defendant."

Plaintiff alleges that the special defense of prescription had been waived when the defendant admitted being ready for the trial, as "when this appears from the action, it is

demurred, and when it does not appear from the allegation, it is alleged by the defense of violation to the Statute of Limitations.''

In passing upon this question, the judge of the lower court said:

''The amendment, in our judgment, does not alter the cause of action exercised, and it involves only a simple error in stating the laws under which the defendant was incorporated, an error which neither changes nor alters the necessary and only parts in this cause.''

The defense of prescription was dismissed.

The lower court committed no error in permitting the amendment. Neither did it err in dismissing the defense of prescription raised. In the first paragraph of the complaint the party defendant was erroneously described as ''a corporation organized under the laws of Puerto Rico and domiciled in the City of San Juan, Puerto Rico.'' In the second paragraph it was alleged—and was admitted in the answer— that the defendant American Railroad Company of Porto Rico ''is a corporation or public service utility engaged in the transportation of freight and passengers by railroad, operating a daily service of trains between the cities of San. Juan and Ponce . . . and operating a railroad branch between the station of Filial Amor, in the municipal district of San Germán and the town of Lajas, which goes through the village of Boquerón in the Municipality of Cabo Rojo, on which its trains operate.'' The summoned and appearing corporation is the one that operates the trains which travel by the crossing on which the collision with the plaintiff's automobile occurred. If that public service corporation was organized under the laws of this Island or under those of New York or of any other state, is a merely descriptive fact, which lacks importance and which cannot affect the responsibility imposed by law on said corporation for the damages caused by the negligence of its employees

in charge of the operation of its trains. The plaintiff is not obliged to allege, as an essential part of his cause of action, the place of incorporation of the defendant. He must allege, to establish the legal capacity of the defendant, that it is a corporation; and if that allegation is controverted, then he is obliged to prove the fact of the incorporation, as well as the place and date on which the corporation was organized. In the instant case the summoned defendant, in the first paragraph of its answer to the complaint, that involves a negative pregnant, admits the essential facts, of its incorporation, and only controverts the non-essential fact of the place of its incorporation.

It would suffice to know the issues raised by the allegations to understand that the defendant cannot allege neither surprise nor prejudice by reason of the amendment allowed by the lower court. There is in Puerto Rico but one corporation known as The American Railroad Company of Puerto Rico. That corporation, which exists by virtue of its incorporation under the laws of New York, is the one engaged in the public service of transportation of passengers and freight between San Juan and Ponce and other towns of the Island; that is the corporation which was summoned and appeared to defend itself, which admitted being the owner of the train that destroyed plaintiff's automobile and interposed defenses tending to free it of responsibility. See *Marston* v. *Tibbetts Mercantile Co.,* 110 Me. 533, 87 A. 220; *Fildew* v. *Stockard,* 256 Mich. 494, 239 N. W. 868; *Riverside Irrigation Company* v. *Cadwell,* 158 Pac. 644; *Daly* v. *Blair,* 183 Mich. 351, 150 N. W. 134; and *First Nat. Bank* v. *Morganthaler,* 219 Mich. 300, 189 N. W. 193.

The amendment authorized by the lower court and consented to by the defendant did not imply a change of party defendant, and much less a change in the cause of action exercised by the complaint. This is demonstrated by the fact that the trial continued uninterruptedly between the

original parties appearing; one sustaining and the other defending the action.

■ Previous to the date of the trial, the defendant filed a motion asking the court to order the plaintiff to be physically examined by two medical experts, before the hearing. The dismissal of said motion is the basis for the third assignment.

In *Aponte* v. *District Court of Mayagüez*, 38 P.R.R. 605, there was raised for the first time before this court the question of whether a district court had the authority to order a plaintiff, in an action for damages to his person, to subject himself to a medical physical examination previous to trial. The order entered to that effect was annulled.

Later, in *Casellas* v. *American Railroad Company of P. R.*, 43 P.R.R. 158, this court affirmed its decision in the *Aponte* case. The decisions in both cases followed that of the Federal Supreme Court in *Union Pacific Railway Co.* v. *Botsford*, 141 U. S. 250. This court then refused to follow the doctrine of the Supreme Court of California, in *Johnston* v. *Southern Pacific Co.*, 150 Cal. 535, in which, sustaining the power of the court to order the physical examination of the plaintiff, it was said:

"This is the first time this question has come before the court for adjudication, and what is here said must be regarded as applicable strictly to civil actions. . . . In civil actions, where a plaintiff is seeking affirmative relief, the adverse party may compel him to give such evidence even to becoming a witness. As to the power of a court to order such examination in proper cases, the overwhelming weight of authority is that it exists."

The reason for the rule established in the *Botsford* case, *supra,* was that the courts of the United States, in view of the lack of a statute, should follow the method of proof which existed at common law. Nevertheless, after the *Botsford* case, it was decided in *Camden etc. Ry. Co.* v. *Stetson,* 177 U. S. 172, that the practice followed in each particular

state would be the standard of federal procedure, and according to that new rule, an order of the Circuit Court ordering a physical examination of the plaintiff was affirmed. The Federal Supreme Court, took notice of the necessity of such power, in the courts, and when it approved the new Rules of Civil Procedure, adopted Rule 35(a) which authorizes such examination.

With the exception of Illinois, Massachusetts, Texas, and Montana, all other state jurisdictions have pronounced themselves in favor of the inherent power of the court to order the examination. See 17 Am. Jur. §55, pp. 38 and 39. New York formed a part of said minority, but believing in the necessity and justice of that power, created it by statutory provision. The Supreme Court of Georgia, in *Richmond & D. R. Co.* v. *Childress,* 82 Ga. 719, 9 S. E. 602, and that of California, in *Johnston* v. *Southern Pacific Co., supra,* decided that if statutory authority was needed for ordering the physical examination of the plaintiff, that authority was to be found in §128, subdivision 5, of the Code of Civil Procedure of California, which is the exact equivalent of subdivision 5 of §7 of our Code of Civil Procedure (1933 ed.), which reads thus:

"5. To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

We are inclined to agree with the appellant and with the state authorities we have cited that the district courts have and should have the inherent and discretionary power to order the medical physical examination of a plaintiff, especially when the latter claims to have suffered various injuries that have caused him incapacities of a permanent nature, and that he will "find himself in the future limited in his physical or mental abilities for the rest of his life." We do not believe in the justice of the rule that allows a plaintiff

in an action for damages to his person to submit his body to a physical examination made by physicians selected by him in order that they testify as experts in his favor at the trial, and which denies the defendant the rights to ask for an examination of the plaintiff by physicians appointed by the court. Between the possible or probable unpleasantness that the examination may cause to the dignity or modesty of the plaintiff, when being obliged to show his body to strange physicians, and the defenseless position in which the defendant would be placed when leaving him at the mercy of all the friendly physicians the plaintiff would choose to examine him and testify in his favor, without any possibility of their being contradicted, justice cannot vacilate and must decide it in favor of equal rights and opportunities of both parties litigant to establish the truth. See Wigmore, on Evidence (3d ed.), Vol. 8, §§ 2194, 2218, and 2220; *Wanek* v. *City of Winona*, 78 Minn. 98, 80 N. W. 851; *City of South Bend* v. *Turner*, 156 Ind. 418, 60 N. E. 271; and 17 C. J. 1052–1055, §357.

We really cannot understand what objection a plaintiff can have in submitting himself to an examination which will serve especially to establish the justice and good faith of his claim. The most frequently adduced reason against the ordering of the examination—the inviolability of the person —has been discarded by reason of the exigencies and necessities of modern life. As Professor Wigmore in his cited work says: "In truth there is no 'inviolability of the person' in any absolute sense; and an appeal to it is merely false rhetoric." And in *Schroeder* v. *Chicago, etc. & P. R. Co.*, 47 Ia. 375, in discussing that same question, the Supreme Court of Iowa expressed itself thus:

"It is said that the examination would have subjected him to danger of his life, pain of body, and indignity to his person. The reply to this is that it should not; and the court should have been careful to so order and direct . . . As to the indignity to which an examination would have subjected him, as urged by counsel, it

is probably more imaginary than real. An examination of the person is not so regarded when made for the purpose of administering remedies; those who effect insurance upon their lives, pensioners for disability incurred in the military service of the country, soldiers and sailors enlisting in the army and navy, all are subjected to rigid examinations of their bodies; and it is never esteemed a dishonor or indignity . . . If for this purpose [to show the nature of the injury], the plaintiff may exhibit his injuries, we see no reason why he may not, in a proper case and under like circumstances, be required to do the same thing for a like purpose upon the request of the other party.''

And in *Lane* v. *Spokane etc. Ry. Co.*, 21 Wash. 119, 57 P. 367, where the power of the lower court to order the examination was also upheld, it was said:

''It is said that it is abhorrent to the principles of liberty to compel a party to submit to such an examination; that it invades the inviolability of the person, is an indignity involving an assault and a trespass, and an impertinence to which a modest woman would not consent. Courts should not sacrifice justice to notions of delicacy, and knowledge of the truth is essential to justice. The attainment of justice in the courts is of far greater importance than any merely personal consideration . . .''

In the case at bar the petition for the physical examination of the plaintiff was made in due time. The injuries the plaintiff alleged he suffered were of such a nature that their importance, extent and duration, could not have been determined by the court, without the testimony of medical experts who, after examining the plaintiff, could testify thereto. The plaintiff offered in evidence and there was admitted by the court, the testimony of two witnesses, one, a radiologist, and the other, a physician-surgeon, who testified extensively regarding the injuries suffered by the plaintiff. Due to the ruling of the court denying the physical examination of plaintiff, defendant was deprived of its right to introduce expert testimony as to the importance and nature of the injuries, being thus at the mercy of the two ex-

perts selected by the plaintiff himself, without any intervention or control by the court.

The best remedy to avoid situations like the one presented by the instant case would be, in our opinion, the adoption by our Legislative Assembly of the bill on Expert Testimony approved and recommended by the National Conference of Commissioners on Uniform State Legislation. The medical expert selected by and under the control of the court is without any doubt the most effective means to arrive at the truth. Meanwhile, we are compelled to decide that the lower court erred in not ordering the physical examination of the plaintiff.

This court, bearing in mind the status of the jurisprudence on this matter, in formulating the Rules of Civil Procedure for the Courts of Puerto Rico, which will be effective on September 1, 1943, included among the same Rule 35, which grants the courts the discretionary power to order a party to submit himself to a physical or mental examination by a physician, when the physical or mental condition of said party is in controversy.

The case of *Aponte* v. *District Court, supra,* and subsequent cases based on the same, must be and are reversed as to their holding to the effect that the district courts lack authority to order the medical physical examination of a plaintiff in an action for damages. See the case of *People* v. *Aspurúa, ante,* p. 244, for any similarity it may have with the case at ·bar.

The above-stated reasons being sufficient to reverse the judgment appealed from, we do not feel it is necessary to consider the other assignments of error.

The judgment must be reversed and the case remanded to the court of origin for a new trial.

Mr. Chief Justice Del Toro agrees with the result.