José María Aponte y Silva, peticionario, *v.* La Corte de Distrito de Mayagüez, Hon. Charles E. Foote, Juez, demandada.

No. 610.—*Visto:* Abril 19, 1928. *Resuelto:* Julio 24, 1928.

*Juan Alemañy Sosa,* abogado del peticionario; *Oscar Souffront,* abogado de la parte demandada en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

José María Aponte y Silva presentó en la Corte de Distrito de Mayagüez una demanda contra Félix Ramos Jurado en reclamación de daños y perjuicios que el demandado le causara a virtud de su negligencia en el manejo de un automóvil. La demanda contiene dos causas de acción. En la primera se alega que el demandante a consecuencia del accidente sufrió contusiones en el cráneo, en la región renal, en la espina dorsal con hemorragia dentro de la cavidad espinal y otras más leves. Y en la segunda se sostiene que al ser conducido el demandante herido a su casa, su esposa doña Isabel Lenoir, que se encontraba en el sexto mes de embarazo, sufrió tan grande excitación nerviosa que comenzó a sentir escalofríos, contracciones uterinas y señales de hemorragia, teniendo que ser sometida inmediatamente a tratamiento médico, no obstante lo cual siguió agravándose hasta que tuvo que ser conducida a un hospital donde se le sometió a una operación y se le extrajo el feto que había muerto y se encontraba en estado de descomposición. Los anteriores hechos son un simple extracto de los alegados en la demanda.

Emplazado el demandado, excepcionó la demanda y pidió la eliminación de ciertos particulares de la misma. Sin haberse resuelto las cuestiones levantadas, el dicho demandado presentó una moción a la corte diciendo que estaba dispuesto a contestar la demanda tan pronto como se resolviera la moción eliminatoria y tuviera la oportunidad de obtener el examen físico del demandante y de su esposa por dos peritos por él designados a fin de determinar la naturaleza de las lesiones sufridas, a cuyo efecto solicitaba de la corte que dictara la

correspondiente orden. Se opuso el demandante, y la corte decidió:

"Vista la moción radicada en el presente pleito por el demandado en la que solicita que se requiera al demandante José María Aponte y Silva y su esposa doña Isabel Lenoir para que se sometan ambos a un examen físico facultativo por el Clínico y Cirujano Dr. Pedro Perea Fajardo y por el Radiólogo y Clínico Dr. Manuel Guzmán Rodríguez Jr., con el fin de que el demandado pueda al contestar la demanda determinar el verdadero alcance de las lesiones sufridas por el demandante y su dicha esposa con motivo del accidente alegado en la demanda, y vista la oposición de la parte demandante, representada por su abogado Ledo. Juan Alemañy Sosa, y discutida dicha moción en Corte abierta, esta corte, atendiendo al hecho de que en la demanda se alegan daños permanentes sufridos por el demandante y su dicha esposa, así como lesiones que solamente pueden ser determinadas por peritos médicos, la corte por la presente declara con lugar la moción del demandado y ordena que el demandante en este caso, José María Aponte y Silva y su esposa Isabel Lenoir se sometan a examen físico facultativo en esta Ciudad de Mayagüez en la Clínica del Dr. Pedro Perea Fajardo el día veinticuatro del corriente mes de marzo a las nueve de la mañana, el cual examen deberá ser efectuado por el Dr. Pedro Perea Fajardo y el Dr. Manuel Guzmán Rodríguez Jr., teniendo derecho dicho demandante y su dicha esposa a tener presente durante dicho examen a su abogado y a uno o dos médicos que designen, pero sin que su dicho abogado ni su médico o médicos tengan derecho a intervención alguna en dicho examen.

"Los procedimientos en este pleito quedan paralizados hasta que el demandante y su dicha esposa sean sometidos a dicho examen físico facultativo y el demandado tendrá veinte días a partir desde la fecha en que se verifique dicho examen para contestar la demanda en el presente pleito."

Entonces el demandante solicitó de esta Corte Suprema que expidiera un auto de *certiorari* y, revisando los procedimientos, anulara la orden de la corte de distrito.

El auto fué expedido y así esta cuestión que ha dado origen a cientos de opiniones, quedó sometida a nuestro estudio y resolución.

Desde 1891 la Corte Suprema de los Estados Unidos por

medio de una amplia opinión emitida por el Juez Gray, expuso su criterio así:

"La única cuestión levantada en este caso es si en una acción civil por daños causados a una persona, la corte, a solicitud del demandado, y con anterioridad a la celebración del juicio, puede ordenar a la parte demandante, sin su consentimiento, que se someta a un examen quirúrgico para determinar la cuantía de los daños reclamados. Estamos de acuerdo con la Corte de Circuito al resolver que no tenía derecho o autoridad legal para dictar o hacer cumplir tal orden.

"Ningún derecho se considera más sagrado ni se protege más cuidadosamente por la ley común que el que tiene todo individuo a la posesión y al dominio de su propia persona, libre de toda limitación o intervención por parte de otra, a menos que la ley así lo autorice clara e incuestionablemente. Como muy bien dijo el Juez Sr. Cooley, 'El derecho a la propia persona podría decirse que es uno de inmunidad absoluta: a que no se le perturbe.' *Cooley on Torts*, 29.

"Por ejemplo, no solamente las prendas de vestir sino también un reloj o una joya, mientras están siendo usados por una persona, están exentos de ser tomados para satisfacer un arrendamiento, un embargo en un procedimiento colateral o en ejecución de una deuda, o en una acción reivindicatoria. 3 Bl. Com. 8; *Sunbolf* vs. *Alford*, 3 M. & W. 248, 253, 254; *Mack* vs. *Parks*, 8 Gray, 517; *Maxham* vs. *Day*, 16 Gray, 213.

"Tanto se invade la inviolabilidad de una persona cuando se le obliga a despojarse de sus vestidos como cuando se le propina un golpe. Obligar a una persona, especialmente si es mujer, a desnudarse o a que se someta a ser tocada por un extraño, sin autoridad legal, es un acto indigno, un acometimiento y una transgresión; y en el derecho común, en lo relativo a la administración de justicia entre las partes, no se conocía ninguna orden o procedimiento que obligara a una persona a despojarse de sus ropas o a someterse a examen, excepto en un ínfimo número de casos, basados en razones especiales y en una antigua práctica heredada de épocas mucho más rudas, que ahora están en desuso en Inglaterra, y que nunca, que sepamos, fueron introducidas en este país. En anteriores épocas, las cortes de derecho común inglesas podían, de creerse prudentes, resolver, mediante inspección o examen y sin la ayuda del jurado, la cuestión de minoridad o la identidad de una de las partes; o, en ape-

lación interpuesta en un caso de mutilación, resolver la cuestión de si hubo o no tal mutilación; y, en una acción basada en mutilación o una agresión atroz, las cortes, haciendo uso de su discreción, podían, después que el jurado hubiera rendido un veredicto a favor del demandante, y a moción de éste, hacer por sí misma un examen de la lesión, *super visum vulneris,* y aumentar el montante de la indemnización. En todos esos casos excepcionales, según dice Blackstone, 'no se ha creído necesario constituir un jurado para que resuelva la cuestion,' porque 'el hecho, por su propia naturaleza, debe serle evidente a la corte, ya practicando una inspección ocular o mediante prueba irrefutable,' y, por tanto, 'la ley se desvía de su curso ordinario, es decir, del veredicto de doce hombres, y sólo descansa en el criterio de la corte misma.' La inspección no se hace con el fin de someter el resultado al jurado, ya que se cree que la cuestión es demasiado sencilla para ser resuelta sin necesidad de la intervención del jurado. 3 Bl. Com. 331–333.

"La autoridad de las cortes de divorcio, al determinar la cuestión de impotencia en lo que afecta la validez de un matrimonio, para ordenar un examen quirúrgico de la persona de cualquiera de los cónyuges, descansa en el interés que el público, así como las partes, tengan en la conservación ó disolución de los lazos matrimoniales, y en la necesidad de tal prueba para poner a la corte en condiciones de ejercer su jurisdicción; y esa autoridad proviene del derecho civil y canónico, según es interpretado por los tribunales espirituales y eclesiásticos que no se rigen para nada por el derecho común. *Briggs* vs. *Morgan,* 2 Hagg. Con 324; S. C. 3 Phillimore, 325; *Devanbagh,* vs. *Devanbagh,* 5 Paige, 554; *Le Barron* vs. *Le Barron,* 35 Vermont, 365.

"El recurso *de ventre inspiciendo,* para averiguar si una mujer sentenciada a la pena capital estaba embarazada, era permitido por el derecho común con el fin de impedir que se privara de la vida a una criatura por nacer en virtud de un delito cometido por la madre.

"El único motivo por el cual un auto similar era permitido por el derecho común en asuntos civiles fué para proteger los derechos de sucesión a la propiedad de un finado contra reclamaciones fraudulentas, cuando se sospechaba que la viuda fingía estar en cinta, animada por el propósito de presentar un heredero ficticio, caso en el cual el heredero o legatario podía valerse de este recurso para determinar si la viuda realmente estaba o no embarazada, y si lo estaba tenerla bajo custodia hasta que diera a luz. 1 Bl. Com. 456; Bac. Ab. Bastard, A. En casos de esa naturaleza, en Inglaterra se ha

expedido muy recientemente esta clase de autos. *In re Blakemore,* 14 Law Journal (N.S.) Ch. 336. Pero ni la erudición ni el estudio de los letrados de la demandante en el recurso de error han podido presentarnos un solo caso en que se haya considerado que este procedimiento se adapta a las costumbres y condiciones del pueblo.'' Union Pacific Railway Co. vs. Bosford, 141 U. S. 250.

Para las cortes federales la fijada anteriormente ha continuado siendo la regla a seguir con excepción de aquéllas que funcionan en estados en donde la ley local autoriza el examen.

En los diferentes estados de la Unión el criterio de las cortes está muy dividido. El punto de vista favorable al examen, ha sido expuesto por la Corte Suprema de California en el caso de *Johnston* v. *Southern Pacific Co.,* 150 Cal. 535, de la siguiente manera:

''La demandante ofreció prueba sobre la naturaleza de sus heridas, que había sido necesario extraer parte del cráneo. Se llamaron médicos para declarar a su favor sobre este y otros extremos sobre daños personales relacionados con él. El caso presentado fué uno de una demandante que se quejaba de y trataba de obtener indemnización por lesiones físicas. La demandada requirió de la demandante una oportunidad para hacer un examen físico de su persona el cual sería realizado por dos médicos, permitiendo que los médicos de la demandante estuvieran presentes y que ella seleccionara un sitio adecuado para el examen. Esta solicitud se hizo primeramente en forma de requerimiento a la demandante, y fué negada por sus abogados. Entonces se dirigió a la discreción de la corte, y a ese efecto se solicitó una orden. No se hizo ninguna objeción de que la petición no fuera hecha a su debido tiempo; de que los médicos escogidos no fueran de reputación; ni de que las circunstancias no fueran en modo alguno o por cualquier motivo ordinarias y propias. Realmente, la corte, al resolver la cuestión y según aparece del récord, declaró que si las autoridades sostenían la contención de la demandada, ella expediría la orden. Por tanto, al negarse a dictar la misma, la corte se fundó en que creía no tener poder para así hacerlo. Esta es la primera vez que la cuestión viene ante nos para que la resolvamos, y debe entenderse que lo que aquí digamos es aplicable estrictamente a acciones civiles. Es un principio de derecho penal que el acusado no puede ser obligado a suministrar prueba contra sí mismo. En pleitos civiles, cuando un demandante solicita un reme-

dio afirmativo, la parte contraria puede obligarle a traer tal evidencia, aun hacerle testigo. En relación con el poder de la corte para ordenar tal examen físico en casos apropiados, el peso de las autoridades se inclina a favor de su existencia. La Corte Suprema de los Estados Unidos es casi la única corte que ha negado esa facultad al resolver el caso de *Railroad Co.* vs. *Botsford*, 141 U. S. 250, (11 Sup. Ct. 1000). El caso de Botsford se revisa en *Brown* vs. *Chicago etc. Ry. Co.*, 12 N. Dak. 61, (102 Am. St. Rep. 564, 95 N. W. 153). Allí se dice que el caso no es una autoridad para una corte del estado, y que la razón de la regla en cuanto a las cortes federales surge del hecho que todas las cortes de los Estados Unidos, menos la Corte Suprema, deben, a falta de estatuto, seguir el procedimiento de prueba según existió en el derecho común. Otra modificación de la regla según fué expuesta en el caso de Botsford se encuentra en *Camden etc. Ry Co.* vs. *Stetson*, 177 U. S. 172, (20 Sup. Ct. 617), resolviéndose que la práctica en cada estado particular será la norma del procedimiento federal. Bajo esta doctrina se confirmó una orden de la corte de circuito que decretó un examen físico del demandante. Sin embargo, las cortes de los estados han resuelto, con excepcional unanimidad, que las cortes tienen facultad para ordenar tales exámenes y que deben ejercitarla con una sana discreción. En algunos estados, como en Nueva York, la cuestión está regulada por medio de estatuto, pero cuando ello no es materia estatutoria las cortes se declaran con singular uniformidad en favor de la existencia de la facultad. Ese poder se rechaza en sólo cuatro estados, a saber: Illinois, Massachusetts, Texas, y Montana. La facultad se rechazó en Nueva York, pero ha sido concedida en virtud de disposición estatutoria. Nuestro Código de Enjuiciamiento Civil prescribe (sec. 128, subd. 5) que 'Toda corte tendrá poder: . . . Para controlar en bien de la justicia, la conducta de sus funcionarios ministeriales, y de toda otra persona que en modo alguno esté relacionada con un procedimiento judicial ante ella, en todo asunto de su competencia.' Bajo un estatuto idéntico en sus términos a éste, se resolvió por la Corte Suprema de Georgia que si se requería autoridad estatutoria para dictar tal orden esa autoridad se encuentra bajo este estatuto. (*Richmond etc. R. R. Co.*, vs. *Childress*, 82 Ga. 719, (14 Am. St. Rep. 189, 9 S.E. 602). La corte suprema de Minnesota dice: 'El permitir en tales casos que el demandante llame tantos médicos amigos como él desee, para que examinen su persona y luego presentarlos en el juicio como peritos, y el negar al demandado al mismo tiempo en cualquier caso el derecho a realizar un examen físico de la persona del demandante

dejándole enteramente a merced de tantos testigos de esa clase como el demandante tenga a bien traer al juicio, constituye una negación de justicia a nuestro entender muy grave para ser tolerada por un momento.' (*Wanek* vs. *City of Winona,* 78 Minn. 98, (79 Am. St. Rep. 354, 80 N. W. 851) ). La corte suprema de Indiana dice lo siguiente en City of *South Bend* vs.'*Turner,* 156 Ind. 418, (83 Am. St. Rep. 200, 60 N.E. 275) : 'Cuando el demandante alega lesiones graves y permanentes, y él o ella se ha sometido a un examen por un médico o cirujano que comparece como testigo del demandante, y la naturaleza, magnitud y efecto de la lesión han de ser deducidas de condiciones objetivas, y no de otra manera, ningún grado de sentimiento justificará una negativa de la moción. Cuando la cuestión se convierte por un lado en una probable violencia a los sentimientos refinados y delicados del demandante, y por otro lado en una probable injusticia para el demandado, la ley no vacilará; la corte tomando en consideración en cada caso, al dictar tales órdenes y al designar el día, lugar y persona, los sentimientos del demandante y las conveniencias del caso según lo permitan los fines de la justicia.' A ese mismo efecto pueden citarse los siguientes casos: (Se citan varios). En el presente caso, según se ha dicho, la corte negó la solicitud por falta de facultad. No nos ha quedado duda de cuál hubiera sido su actuación si ella se hubiera creído con facultad, pues el récord demuestra que la corte entendía que era un caso apropiado para su ejercicio. Tal error que afecta tan claramente los derechos substanciales de la demandada exige la revocación de la sentencia.'' 150 Cal. 540–543.

Corpus Juris resume la jurisprudencia así:

''De acuerdo con el parecer adoptado por lo que es quizá el mayor número de jurisdicciones, en una acción de daños y perjuicios por lesiones personales está dentro de la facultad de la corte el exigir que la persona lesionada se someta a un examen físico para determinar la magnitud de la lesión. Sin embargo, en otras jurisdicciones se resuelve que la facultad no existe a menos que el demandante consienta a ello. Aun cuando hay alguna autoridad al efecto de que un examen debe ser concedido como cuestión de derecho, la regla sostenida por el peso de las autoridades es que, a falta de estatuto, la cuestión descansa en la sana discreción de la corte que entiende en el asunto y que debe ser ejercitada en bien de la justicia, rigiéndose cada caso principalmente por sus propios hechos. En algunas jurisdicciones la cuestión del examen físico del demandante en una acción de daños y perjuicios es objeto de disposiciones estatutorias

específicas. Se ha resuelto que tales estatutos caen dentro de la autoridad constitucional de la legislatura. El examen deberá ser practicado en tal forma que el demandante no sea sometido a molestias o exposición innecesarias, y una orden decretando un examen debe demostrar afirmativamente que los derechos del demandante fueron protegidos debidamente. La solicitud deberá fundarse en un *affidavit* demostrativo de que el conocimiento de hechos materiales y necesarios con respecto a las lesiones o condición del demandante puede ser obtenido únicamente en virtud de tal examen. Por tanto, no se decretará un examen cuando hay prueba abundante sobre la magnitud de la lesión, o cuando su naturaleza no se discute seriamente, o cuando el examen solicitado pueda perjudicar o poner en peligro la salud del demandante, o causarle fuerte dolor. Un examen que requiere la administración de anestesia generalmente será negado cuando hay objeción por parte del demandante. Se ha resuelto que cuando una lesión no es aparente y de hecho se niega su existencia es un abuso de discreción el permitir que el demandante declare en relación con la lesión y su carácter de permanente sin permitirse que otros testigos competentes y especialmente expertos hagan un examen y demuestren, si pueden, que en realidad no hay lesión." 17 C. J. 1052-1055, Sec. 357.

La cuestión es en verdad de gran trascendencia y envuelve derechos encontrados. No hay duda alguna que una mayoría de las cortes supremas de los estados se ha decidido por la afirmativa, pero que el peso de las autoridades esté en favor del derecho a decretar el reconocimiento contra la voluntad de la persona que va a ser reconocida, es cuestionable.

En Puerto Rico no hay ley que autorice expresamente el reconocimiento. No se ha citado por las partes ninguna decisión de esta corte que lo sostenga. Es éste, pues, el momento en que el camino a seguir en esta jurisdicción debe marcarse y, después de un cuidadoso estudio, nos parece que debe prevalecer la regla que consagra el derecho a que la persona no sea examinada en contra de su voluntad, expuesta de modo admirable y convincente en la decisión de la Corte Suprema nacional que dejamos citada. Dicha regla está más en armonía con la dignidad personal cuyo nivel debe tratar de elevarse constantemente.

Es cierto que pueden existir casos en que seres degenerados hipócritamente invoquen el sentimiento de la dignidad personal para sostener una mala causa. Sin embargo, en tales casos sería muy difícil engañar a la corte. El verdadero ser moral del litigante, inspirador de crédito o generador de desconfianza, surge generalmente de la prueba. El riesgo que se corre abriendo las puertas a la investigación es mayor, pues así como puede haber litigantes y peritos indignos capaces de combinarse para explotar a otra persona aparentando lesiones y sufrimientos que en realidad de verdad no existan, los hay de tal manera honestos que preferirían perder cualquier derecho si para ejercitarlos se les obligara a entregar su persona al examen de peritos extraños designados por la corte a sugestión de la parte contraria.

La orden de que se queja el peticionario debe, pues, *anularse, y el pleito devolverse* a la corte de distrito de su origen para ulteriores procedimientos no inconsistentes con esta opinión.