El Pueblo de ·Puerto Rico, demandante y apelado, *v.* Bartolo Aspurúa Pacheco, acusado y apelante.

Núm. 9548.—*Sometido:* Noviembre 24, 1942. *Resuelto:* Enero 15, 1943.

R. *Rivera Zayas,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El acusado ha apelado de una sentencia que le condenó a seis años de presidio luego de rendido por un jurado un veredicto de homicidio voluntario.

El acusado alega que el veredicto no está sostenido por la evidencia. Creemos innecesario hacer una relación detallada de la prueba aducida en el juicio. Está admitido que el acusado disparó y mató al interfecto. La prueba de cargo tendió a demostrar que el acusado, escondiendo su mano derecha y agachándose, se acercó a un inodoro y que se oyeron varios disparos mientras el acusado se hallaba "la mitad afuera y la mitad adentro" del inodoro. Admitió el acusado haber disparado al interfecto en o en los alrededores del inodoro, pero alegó que lo había hecho en defensa propia, cuando el último, luego de enfrascarse en una discusión con él, le golpeó varias veces en el brazo con un tubo que estaba en el suelo. El jurado resolvió el conflicto en la evidencia en favor del gobierno, y no vemos razón para alterar el veredicto rendido (*Pueblo* v. *Cruz,* 59 D.P.R. 569; *Pueblo* v. *Olivencia,* 54 D.P.R. 908).

Después de haber declarado el acusado con respecto a los alegados golpes que le fueran propinados por el occiso, el fiscal ocupó la silla testifical en refutación. Declaró que cuando vió al acusado en el cuartel de la policía poco después del suceso de sangre, el último se abstuvo de declarar y se negó a someterse a la prueba de parafina, pero que "a presencia del Jefe de Caguas, de mi taquígrafo Sr.

Luis Pérez Jr., de mí mismo, le invité a que se despojara su ropa, quitándose el gabán, la camisa, la corbata y la camiseta y le hice un examen para ver si descubría en él huellas de alguna clase y no encontré ninguna huella de nada en absoluto sobre su cuerpo.''

Arguye el acusado que esta declaración del fiscal equivale a infringir el artículo 2 de la Ley Orgánica (48 U.S.C.A. Sec. 737) que dispone que ''ninguna persona será . . . obligada en ninguna causa criminal a ser testigo contra sí misma''. (A ese mismo efecto, véase el artículo 7 de nuestro Código de Enjuiciamiento Criminal).

Al hacer la anterior alegación, el acusado descansa principalmente en los casos de *Reyes* v. *Corte Municipal*, 41 D.P.R. 902, y *State* v. *Height*, 117 Iowa 650, 91 N.W. 935 (1902). En el caso de *Reyes* esta corte resolvió que obligar a un acusado, con fines de una pretendida identificación en el transcurso del juicio, ''que se despeinara, se echara el pelo a la cara, y se pusiera la gorra echada hacia la frente'', constituía una violación del privilegio contra la autoincriminación. En el caso de *Height* se resolvió que el testimonio de médicos que habían practicado bajo compulsión un examen físico del acusado, no era admisible por razones similares.

La contención del acusado es al efecto de que el privilegio contra la autoincriminación no se limita a estar exento de declarar bajo compulsión. Arguye que también le da derecho a rehusar someterse a una inspección física de determinada porción de su cuerpo, con el resultado de que la evidencia obtenida por medio de tal inspección involuntaria queda excluída por el privilegio en cuestión.

Podríamos disponer de esta cuestión sin una ulterior consideración de la misma, en vista de que la defensa no se opuso a este testimonio durante el juicio. Bastaría asimismo indicar sencillamente que el privilegio, aun si existiera bajo las presentes circunstancias, fué renunciado en este caso cuando el acusado, a invitación del fiscal, se despojó voluntariamente de su ropa (Véase *Reyes* v. *Corte*

*Municipal,* supra, a las páginas 906, 907), y cuando ocupó la silla testifical en su propia defensa. Además, la premisa en que el acusado funda su contención, en el sentido de que la situación en el presente caso es similar a la del de *Reyes*— que el acusado estaba en efecto declarando contra sí mismo cuando el fiscal ocupó la silla testifical como su portavoz— ha sido rechazada en otros casos (*O'Brien* v. *State,* 25 N.E. 137 (Ind. 1890); *Ross* v. *State,* 182 N.E. 865, 69 (Ind. 1932); *State* v. *Gatton,* 20 N.E. (2d) 265 (Ohio, 1938). Mas preferimos basar nuestra decisión en el motivo fundamental de que el requerir de un acusado que se someta contra su voluntad a un examen físico de esta naturaleza no equivale a una violación del privilegio contra la autoincriminación.

Nos damos cuenta de que hay casos que, como el de *Reyes,* han resuelto lo contrario. Sin embargo, "El peso numérico de las autoridades parece favorecer el punto de vista sostenido por el Profesor Wigmore de que el privilegio debería limitarse a manifestaciones en calidad de testimonio hechas por el acusado, ya por escrito u oralmente, y no debería hacerse extensivo a exposiciones físicas que se obligue al acusado hacer o a experimentos (*tests*) a que se le someta contra su voluntad." 40 Mich. L. Rev. 907 (1942). *Cf.* Barr, *Privileges Against Self-Incrimination in California,* 30 Calif. L. Rev. 547, 50 (1942); Morgan and Maguire, *Cases on Evidence,* anotación a las páginas 227, 28.

El análisis que hace Wigmore de este problema demuestra la falacia de la reclamación del privilegio en este caso. Indica él que ". . . no es meramente cualquiera o toda compulsión lo que constituye la médula del privilegio, históricamente y de acuerdo con las definiciones constitucionales, sino *prestar declaración bajo compulsión.* . . . El privilegio protege al individuo de hacer revelaciones *que se pretenda arrancarle como testigo en un proceso legal en su contra.* . . . . El límite del privilegio es claro. . . . una inspección de las características físicas por el Tribunal o

por los testigos no puede constituir una violación del privilegio, porque no exige nada del acusado como testigo, esto es, con la responsabilidad de su testimonio. Que se le exija alguna vez en tales casos ejercitar acción muscular—como cuando se le ordena que se quite los zapátos o se arrolle las mangas—es inmaterial . . . toda vez . . . que no es la compulsión por sí sola lo que constituye la idea del privilegio, sino compulsión para obtener testimonio. Lo que se obtiene del acusado por medio de ese acto no es una declaración acerca de su cuerpo, sino su cuerpo en sí (ante, sec. 1150). A menos que se haga cualquier tentativa para obtener una declaración, escrita u oral, en la cual pueda confiarse en cuanto a su conocimiento pleno de los hechos y las reacciones de su mente al expresarla, el requerimiento que se le haga no constituye uno de naturaleza testimonial.'' (8 Wigmore on Evidence, secs, 2263, 5).

Nadie en nuestra historia judicial ha sido más celoso en la protección de los derechos civiles del individuo que el Juez Asociado Sr. Holmes. Sin embargo, en el caso de Holt v. United States, 218 U.S. 245, la Corte Suprema, por voz de él, dijo, a las páginas 252, 3:

Otra objeción se funda en el alcance extravagante de la Quinta Enmienda. Surgió la cuestión de si una camisa pertenecía al confinado. Un testigo declaró que el confinado se la había puesto y le había quedado bien. Se objeta que él hizo esto bajo la misma coacción que hizo inadmisible su declaración, y que debía eliminarse por las mismas razones. Pero la prohibición de obligar a un individuo en un proceso criminal a ser testigo en su contra es una que envuelve el uso de compulsión física o moral para obtener de él manifestaciones, y no el que se excluya su cuerpo como evidencia cuando sea necesario. En principio, la objeción impediría a un jurado mirar el prisionero y comparar sus facciones con una fotografía presentada en evidencia. . . .''

En el caso de Ohio de State v. Gatton, supra, la corte dijo, a la página 266:

''Bajo el título de 'Autoincriminación,' 1 Greenleaf on Evidence, décimosexta edición, sección 469 e se encuentra lo siguiente:

" 'El alcance del privilegio, históricamente y en principio, sólo incluye el procedimiento de testificar, oralmente o por escrito, esto es, el procedimiento de obtener revelaciones mediante manifestaciones. No se aplica a tales circunstancias físicas de carácter evidenciario que puedan existir en el cuerpo del testigo o acerca de su persona. El privilegio no descansa en la idea extrema de que una persona culpable tiene derecho a encubrir todo lo que esté a su alcance sobre la evidencia de su crimen; sino en la idea de que no se le podrá obligar a que la confiese de sus propios labios. No obstante, en la última generación una benevolencia falsa y sentimental hacia el acusado culpable ha dado lugar a una tendencia en algunas jurisdicciones a extender el privilegio de una manera que nunca se imaginaron aquéllos que trazaron sus cimientos; y a menudo se levanta ahora la cuestión de si el privilegio no protege a una persona acusada, de la inspección o examen o exhibición de su persona. En la gran mayoría de las jurisdicciones esta extensión no ha sido sancionada; por ejemplo, el acusado puede ser obligado a ponerse de pie en la corte con el fin de identificarlo; puede enviarse un médico para que lo examine, mientras está en la cárcel, en cuanto a su condición mental; pueden tomarse las medidas de los pies del acusado con el propósito de identificar las huellas; puede obligarse al acusado a poner su pie sobre huellas con el propósito de investigar su parecido.' "

En resumen, el objeto de este privilegio es impedir "el empleo de procedimientos legales para *extraer de los propios labios de la persona* una admisión de su culpabilidad. . . ." (Wigmore, *supra*, sec. 2263). Y el privilegio que garantiza la libertad de no testificar bajo compulsión, contenido en la frase "ser un testigo contra sí mismo" "no debe extenderse irracionalmente para cubrir situaciones claramente fuera del significado corriente del privilegio y de la política que lo respalda." (*Ross* v. *State,* supra, a la página 868).

Reconocemos que el razonamiento aquí expuesto destruye los cimientos sobre los cuales descansa el caso de *Reyes* v. *Corte,* supra. Ese caso es, por lo tanto, revocado expresamente.

■ Por último, se queja el acusado de que el fiscal de distrito, en su informe al jurado, arguyó que "los golpes que alega el acusado le fueron inferidos por el interfecto

con este tubo no existen nada más que en la mente de la defensa, pues ni este Fiscal, ni el Jefe de la Policía Insular de Caguas, ni mi secretario el señor Luis Pérez observamos rastro alguno de golpe en el cuerpo del acusado''.

Los autos ante nos no contienen una transcripción del informe del fiscal de distrito. Estamos por tanto imposibilitados de determinar si ese comentario se hizo o si el mismo fué objetado. Pero asumiendo esos hechos, resolvemos que éste fué un comentario legítimo hecho por el fiscal sobre su propio testimonio. El caso de *Pueblo* v. *Yera,* 60 D.P.R. 818, es aplicable a esta situación en vez del de *Pueblo* v. *Marchand,* 53 D.P.R. 671.

*La sentencia de la corte de distrito será confirmada.*