CARLOS F. BAHR, demandante y apelado, *v.* AMERICAN RAILROAD COMPANY OF PUERTO RICO, demandada y apelante.

Núm. 8518.—*Sometido:* Noviembre 18, 1942. *Resuelto:* Mayo 17, 1943.

*Mariano Acosta Velarde,* abogado de la apelante; *José Martín Betancourt* y *Luis A. Negrón López,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Carlos F. Bahr demandó a The American Railroad Company of Puerto Rico, en reclamación de la suma de $21,500

por daños y perjuicios que alegó haber sufrido al chocar con el automóvil de su propiedad que él mismo conducía, uno de los trenes de la corporación demandada.

Los hechos alegados por el demandante pueden resumirse así:

El día 19 de noviembre de 1934, el demandante apelado Carlos F. Bahr, guiaba su automóvil por la carretera insular de Lajas a Cabo Rojo. Al llegar al kilómetro 4, hm. 8 de dicha carretera dobló hacia la izquierda para tomar un camino que, cruzando la vía férrea en un paso a nivel, conduce a la finca "Firmeza", donde residía en esa fecha. Al cruzar dicho paso a nivel, fué arrollado por la locomotora número 57, propiedad de la corporación demandada, quedando averiado el automóvil del demandante y sufriendo éste lesiones graves.

Alegó el demandante que el accidente se debió exclusivamente a la negligencia del conductor de la demandada, quien actuaba como empleado de la misma, al no tocar pito o campana al acercarse al paso a nivel, al conducir la locomotora a gran velocidad y no reducir la misma al aproximarse al sitio del accidente, y a no tener la demandada en dicho sitio cadenas o portones. Alegó además el demandante, que la demandada incurrió en todas las omisiones señaladas, no obstante saber ella y sus empleados que el camino donde está el paso a nivel se destinaba a uso público y era continuamente transitado por peatones y vehículos; que la visibilidad en ese sitio estaba obstruída; y que el paso a nivel está establecido a corta distancia de una curva en la vía.

Negó la demandada en su contestación haber sido culpable de negligencia, alegando como defensa especial la negligencia contributoria del demandante como la causa próxima e inmediata del accidente.

Condenada a pagar al demandante una indemnización de $9,100, más las costas y gastos y $500 en concepto de honorarios de abogado, la corporación demandada interpuso el

presente recurso, y para sostenerlo imputa a la corte inferior la comisión de once errores. Los tres primeros leen así:

"1. Al permitir con la oposición de la demandada que en el acto de la vista el demandante enmendara su demanda en el sentido de que en vez de alegar que la demandada es una corporación creada de acuerdo con las leyes de Puerto Rico, lo es bajo las leyes del estado de Nueva York.

"2. Al declarar que la acción que ejercita el demandante no ha prescrito.

"3. Al negar la moción de la demandada solicitando que el demandante fuera examinado antes de la vista del caso y durante la vista del caso por peritos médicos designados por la Corte.

■■■ Los dos primeros señalamientos pueden discutirse conjuntamente.

Al comenzar la vista del caso el demandante solicitó de la corte permiso para enmendar la demanda en el sentido de que en vez de alegar que la demandada, The American Railroad Company of Porto Rico, es una corporación creada de acuerdo con las leyes de Puerto Rico, lo era de acuerdo con las leyes del Estado de Nueva York. No se opuso la demandada a la enmienda y la corte la permitió.

Al comenzar la demandada a ofrecer su prueba solicitó permiso para enmendar su contestación aduciendo como defensa especial la prescripción de la acción ejercitada por el demandante toda vez que "la acción contra la American Railroad Company of Puerto Rico, corporación organizada de acuerdo con las leyes del Estado de Nueva York, había sido comenzada a virtud de la enmienda de la demanda, con fecha 27 de septiembre de 1939, habiendo transcurrido, por tanto, más de un año desde que el agraviado supo del daño y el comienzar (sic) el ejercicio de la acción contra la demandada."

Alegó el demandante que la defensa especial de prescripción había sido renunciada al mostrarse la demandada lista para el juicio, pues "cuando esto surge de la acción, se alega

por excepción previa y cuando no surge de la alegación se alega por defensa de prescripción.''

Al resolver la cuestión aquí envuelta, el juez en su opinión se expresó en la forma siguiente:

"La enmienda, a nuestro juicio, no cambia ni altera la dicha causa de acción ejercitada y sólo se trata de un simple error al expresarse las leyes a que se amparó la demandada para su constitución lo que tampoco cambia ni altera las partes necesarias y únicas en este litigio.''

La defensa de prescripción fué desestimada.

La corte inferior no cometió error al permitir la enmienda ni tampoco al desestimar la alegada defensa de prescripción. En el párrafo primero de la demanda se describió erróneamente a la parte demandada como ''una corporación organizada de acuerdo con las leyes de Puerto Rico, y domiciliada en la Ciudad de San Juan, Puerto Rico.'' En el párrafo segundo se alegó— y en la contestación se admitió—que la demandada American Railroad Company of Puerto Rico ''es una corporación o empresa de servicio público que se dedica al transporte de carga y pasajeros por ferrocarril, teniendo establecido un servicio diario de trenes entre las ciudades de San Juan y Ponce . . . y teniendo establecido un ramal ferroviario entre la estación de Filial Amor, en el término municipal de San Germán y el pueblo de Lajas, pasando por el poblado de Boquerón del término Municipal de Cabo Rojo, por donde transitan sus trenes.'' La corporación emplazada y compareciente es la que opera y conduce los trenes que circulan por el cruce en donde ocurrió el choque con el automóvil del demandante. Si esa corporación de servicio público fué organizada de acuerdo con las leyes de esta Isla o de conformidad con las de Nueva York o cualquier otro estado, es un hecho meramente descriptivo, que carece en absoluto de importancia y que en nada puede afectar la responsabilidad que la ley impone a dicha corporación por los daños causados por la negligencia de sus empleados a cargo

del manejo de sus trenes. El demandante no está obligado
a alegar, como parte esencial de su causa de acción, el sitio
de incorporación de la demandada. Sí debe alegar, para es-
tablecer la capacidad legal de la demandada, que ésta es una
corporación; y si esa alegación es controvertida, entonces
está obligado a probar el hecho de la incorporación y como
parte del mismo el sitio y la fecha en que la corporación
quedó constituída. En el caso de autos, la demandada y em-
plazada, en el párrafo primero de su contestación, que en-
vuelve un *"negative pregnant"*, admite el hecho esencial, el
de su incorporación, y solamente controvierte el hecho no
esencial, el del sitio de su incorporación.

Basta conocer los *"issues"* planteados por las alegacio-
nes para comprender que la demandada no puede alegar ni
sorpresa ni perjuicio con motivo de la enmienda permitida
por la corte inferior. No hay en Puerto Rico más que una
corporación llamada "The American Railroad Company of
Puerto Rico". Esa corporación, que existe por virtud de su
incorporación bajo las leyes de Nueva York, es la que se
dedica al servicio público de transporte de pasajeros y carga
entre San Juan y Ponce y demás pueblos de la Isla; es ésa
la corporación emplazada y la que compareció a defenderse,
admitiendo ser dueña del tren que arrolló el automóvil del
demandante e interponiendo defensas tendientes a exonerarla
de responsabilidad. Véanse: *Marston* v. *Tibbetts Mercantile
Co.,* 110 Me. 533, 87 A. 220; *Fildew* v. *Stockard,* 256 Mich.
494, 239 N. W. 868; *Riverside Irrigation Company* v. *Cad-
well,* 158 Pac. 644; *Daly* v. *Blair,* 183 Mich. 351, 150 N. W.
134; y *First Nat. Bank* v. *Morganthaler,* 219 Mich. 300, 189
N. W. 193.

La enmienda autorizada por la corte inferior y consen-
tida por la demandada no implicaba un cambio de parte de-
mandada y mucho menos un cambio en la causa de acción
que se ejercitaba en la demanda. Prueba de ello es que el
juicio continuó sin interrupción alguna entre las mismas par-

922

tes que originalmente comparecieron, una a proseguir y la otra·a defender la acción.

▮ Con anterioridad a la fecha del juicio, la demandada radicó una moción para que se ordenase el demandante fuese examinado físicamente por dos peritos médicos, antes de la vista del caso. La denegación de dicha moción es la base del tercer señalamiento.

En *Aponte* v. *Corte de Distrito de Mayagüez*, 38 D.P.R. 673, se levantó por primera vez ante esta Corte la cuestión sobre si una corte de distrito está facultada para ordenar a un demandante, en una acción por daños y perjuicios a su persona, que se someta a un examen físico facultativo con anterioridad al juicio. La orden expedida a ese efecto fué anulada.

Posteriormente, en *Casellas* v. *American Railroad Company of P. R.*, 43 D.P.R. 166, este Tribunal reafirmó su decisión en el caso de *Aponte*. Las decisiones en ambos casos se basaron en la dictada por la Corte Suprema Federal en *Union Pacific Railway Co.* v. *Botsford*, 141 U. S. 250, negándose esta Corte a seguir el criterio de la Corte Suprema de California, expuesto en *Johnston* v. *Southern Pacific Co.*, 150 Cal. 535, en el que al sostener la facultad de la corte para ordenar el examen físico del demandante, se dijo:

"Ésta es la primera vez que la cuestión viene ante nos para que la resolvamos, y debe entenderse que lo que aquí digamos es aplicable estrictamente a acciones civiles. . . . En pleitos civiles, cuando un demandante solicita un remedio afirmativo, la parte contraria puede obligarle a traer tal evidencia, aun hacérle testigo. En relación con el poder de la Corte para ordenar tal examen físico en casos apropiados, el peso de las autoridades se inclina a favor de su existencia."

La razón de la regla establecida en el caso de *Botsford*, supra, fué que las Cortes de Estados Unidos, a falta de estatuto, deben seguir el procedimiento de prueba según existió en el derecho común. Empero, con posterioridad al caso de *Botsford*, en *Camden etc. Ry. Co.* v. *Stetson*, 177 U. S. 172 se resolvió que la práctica seguida en cada estado particular

será la norma del procedimiento federal, y de acuerdo con esa nueva regla se confirmó una orden de la Corte de Circuito que decretó el examen físico del demandante. La Corte Suprema Federal, dándose cuenta de la necesidad de que exista esa facultad, al promulgar las nuevas Reglas de Enjuiciamiento Civil, adoptó la 35(a) que autoriza el examen.

Con excepción de Illinois, Massachusetts, Texas y Montana, todas las jurisdicciones estatales se han pronunciado en favor de la existencia de la facultad inherente de la corte para ordenar el examen. Véase: 17 Am. Jur. §55, págs. 38 y 39. Nueva York formaba parte de esa minoría, pero creyendo en la necesidad y justicia de esa facultad, la creó por disposición estatutaria. La Corte Suprema de Georgia, en *Richmond & D. R. Co.* v. *Childress,* 82 Ga. 719, 9 S. E. 602, y la de California en *Johnston* v. *Southern Pacific Co.,* supra, resolvieron que si se necesitara autoridad estatutaria para poder ordenar el examen físico del demandante, esa autoridad se encuentra en el Código de Enjuiciamiento Civil de California, art. 128, subdiv. 5, que es el equivalente exacto del apartado 5 del artículo 7 de nuestro Código de Enjuiciamiento Civil (Ed. 1933), que lee así:

"5. Para dirigir en bien de la justicia, la conducta de sus funcionarios y de las demás personas que tuvieren algún interés en cualquier procedimiento judicial seguido ante ella, o actuación perteneciente a dicho procedimiento."

Nos inclinamos a convenir con la parte apelante y con las autoridades estatales que hemos citado, en que las cortes de distrito tienen y deben tener la facultad inherente y discrecional para decretar el examen físico facultativo de un demandante, especialmente cuando éste alega haber sufrido varias lesiones que le han producido ciertas incapacidades de carácter permante y que "se verá en lo sucesivo limitado de sus aptitudes para el esfuerzo físico o mental durante toda la vida." No nos parece justa la regla que permite a un demandante en acción de daños y perjuicios a su persona

someterse al examen físico de su cuerpo por médicos selec-
cionados por él, para que declaren como peritos a su favor
en el acto del juicio, y que niega al demandado el derecho a
solicitar que se practique el examen del demandante por mé-
dicos designados por la corte. Entre la posible o probable
molestia que el examen pueda causar a la dignidad o pudor
del demandante, al verse obligado a mostrar su cuerpo a mé-
dicos extraños y el estado de indefensión en que se colocaría
al demandado al dejarle enteramente a merced de todos los
médicos amigos que el demandante tenga a bien elegir para
que le examinen y declaren a su favor sin temor alguno de
que se les pueda contradecir, la justicia no puede vacilar y
debe decidirse en favor de la igualdad de derechos y opor-
tunidades para establecer la verdad, para ambas partes liti-
gantes. Véanse: Wigmore, *on Evidence* (3a. Ed.) Vol. 8,
secs. 2194, 2216 y 2220; *Wanek* v. *City of Winona*, 78 Minn.
98, 80 N. W. 851; *City of South Bend* v. *Turner*, 156 Ind.
418, 60 N. E. 271; y 17 C. J. 1052-1055, sec. 357.

No comprendemos en verdad qué objeción pueda tener un
reclamante a someterse a un examen que ha de servir espe-
cialmente para establecer la justicia y buena fe de su recla-
mación. La razón más frecuentemente aducida en contra de
que se ordene el examen—la inviolabilidad de la persona—
ha sido descartada por las necesidades y exigencias de la
vida moderna. Como dice el Profesor Wigmore en su ya
citada obra: "En verdad, no existe la 'inviolabilidad de la
persona' en ningún sentido absoluto; y el recurrir a ella es
simplemente falsa retórica." Y en *Schroeder* v. *Chicago, etc.
& P. R. Co.*, 47 Ia. 375, al discutir esa misma cuestión la
Corte Suprema de Iowa se expresó así:

"Se dice que el examen hubiese puesto su vida en peligro y le
hubiese sometido a dolores físicos e indignidad para su persona. La
respuesta a esto es que no debería ser así; y la corte debería haber
tenido el cuidado de así ordenarlo . . . En cuanto a la indignidad
a que un examen le hubiese sometido, según alega su abogado, eso es
probablemente más imaginario que real. Un examen de la persona

no es así considerado cuando se practica con el propósito de aplicar remedios; los que toman pólizas de seguro sobre sus vidas, los pensionados por incapacidad incurrida en el servicio militar de la patria, los soldados y marineros que ingresan en el Ejército y en la Marina, todos ellos son sometidos a rigurosos exámenes de sus cuerpos; y eso nunca es considerado como un deshonor o una indignidad . . . · Si para este propósito (para demostrar la naturaleza de las lesiones) el demandante puede exhibir sus lesiones, no vemos razón alguna para que no pueda, en un caso apropiado y bajo iguales circunstancias, ser requerido para que las exhiba con el mismo propósito a petición de la otra parte.''

Y en *Lane* v. *Spokane etc. Ry. Co.*, 21 Wash. 119, 57 P. 367, en donde se sostuvo también la autoridad de la corte inferior para decretar el examen, se dijo:

''Se arguye que está en pugna con los principios de libertad el obligar a una parte a someterse a un examen; que invade la inviolabilidad de la persona, es una indignidad que envuelve un acometimiento y un allanamiento, y una impertinencia a la cual no podría consentir ninguna mujer honesta. Las cortes no deben sacrificar la justicia a estas nociones de delicadeza, y el conocimiento de la verdad es esencial para la justicia. El que se haga justicia por las Cortes es de mucha mayor importancia que cualquiera mera consideración personal . . .'' ·

En el caso de autos, la solicitud para el examen físico del demandante fué hecha a tiempo. Las lesiones que alegó el demandante había sufrido eran de tal naturaleza, que su importancia, extensión y duración no podían ser determinadas por la corte sin el testimonio de peritos médicos que después de examinar al demandante pudieran declarar sobre tales extremos. El demandante ofreció en evidencia y la corte admitió el testimonio de dos peritos, un radiólogo y un médico cirujano, quienes declararon extensamente sobre las lesiones sufridas por el demandante. Debido a la resolución de la corte denegando el examen físico del demandante, el demandado se vió privado de su derecho a presentar evidencia pericial en cuanto a la importancia y naturaleza de las lesiones, quedando así el demandado a merced de los dos

peritos seleccionados por el propio demandante, sin intervención o control alguno por parte de la corte.

El remedio más eficaz para evitar situaciones como la del presente caso sería, a nuestro juicio, la adopción por nuestra Asamblea Legislativa del proyecto de ley sobre Testimonio Pericial aprobado y recomendado por la Conferencia Nacional de Comisionados Sobre Legislación Estatal Uniforme. El perito forense, seleccionado por y bajo el control de la corte es sin duda alguna el medio más efectivo para llegar al conocimiento de la verdad. Entretanto nos vemos obligados a resolver que la corte inferior erró al no decretar el examen físico del demandante.

Este tribunal, teniendo en cuenta el estado de la jurisprudencia sobre esta materia, al redactar las Reglas de Enjuiciamiento Civil para las Cortes de Puerto Rico, las cuales empezarán a regir el primero de septiembre de 1943, incluyó entre las mismas la Regla 35 que confiere a las cortes la facultad discrecional de ordenar a una parte que se someta a un examen físico o mental por un médico, cuando la condición física o mental de dicha parte estuviere en controversia.

El caso de *Aponte* v. *Corte,* supra, y los casos subsiguientes basados en el mismo, en cuanto sostienen que las cortes de distrito carecen de autoridad para ordenar el examen físico facultativo de un demandante en acción de daños y perjuicios, deben ser y quedan revocados. Véase, por la analogía que pueda tener con el de autos, el caso de *El Pueblo* v. *Azpurú,* 61 D.P.R. 252.

Siendo las razones expuestas suficientes para justificar la revocación de la sentencia recurrida, creemos innecesario discutir los demás señalamientos.

*La sentencia debe ser revocada y el caso devuelto a la corte de su procedencia para la celebración de un nuevo juicio.*

El Juez Presidente Sr. Del Toro está conforme con el resultado.